15-1223

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

**KANEKA CORPORATION,**

**Appellant,**

**v.**

**SKC KOLON PI, INC.,**

**Appellee.**

**Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Reexamination No. 95/001,707**

---

## PRINCIPAL BRIEF FOR APPELLANT KANEKA CORPORATION

---

Pattric J. Rawlins
*Counsel for Appellants*
Anthony J. Dain
Frederick K. Taylor
Li Zhang
PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
(619) 238-1900

## CERTIFICATE OF INTEREST

Counsel for the Appellant, Pattric J. Rawlins, certifies the following:

1.      The full name of every party or amicus represented by me is:

Kaneka Corporation

2.      The name of the real party in interest represented by me is:

Kaneka Corporation

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Procopio, Cory, Hargreaves & Savitch LLP: Pattric Rawlins, Anthony Dain, Frederick Taylor, Li Zhang

Westerman, Hattori, Daniels & Adrian, LLP: Stephen Adrian, Scott Daniels

Date: March 6, 2015            /s/ Pattric J. Rawlins
                               Pattric J. Rawlins
                               Procopio, Cory, Hargreaves &
                               Savitch LLP
                               525 B Street, Suite 2200
                               San Diego, CA 92101
                               pattric.rawlins@procopio.com

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ........................................................................... iv

STATEMENT OF RELATED CASES ............................................................1

STATEMENT OF APPELLATE JURISDICTION .................................................1

STATEMENT OF THE ISSUES.....................................................................1

STATEMENT OF THE CASE.........................................................................4

STATEMENT OF THE FACTS ......................................................................6

    I.     The 704 Patent................................................................................6

    II.    Original Prosecution.......................................................................7

    III.   *Inter partes* Reexamination ..........................................................7

    IV.    Appeal to the PTAB ......................................................................10

SUMMARY OF ARGUMENT .......................................................................12

ARGUMENT .................................................................................................14

    I.     Standard of Review .......................................................................14

    II.    The Akahori PI film does not inherently possess the claimed stiffness................................................................................................15

    III.   The PTAB erroneously affirmed the CRU examiners erroneous use of optimized values in the inherency analysis ............................17

    A.    The 20 μm Akahori film thickness is an optimized value ..................18

    B.    The $1.85 \times 10^{-7}$ (k) value is an optimized value ....................................21

    IV.    The stiffness values calculated for Akahori are mere possibilities.....25

V.    The CRU examiners impermissibly used the 704 patent disclosure in the obviousness analysis ..................................................................28

CONCLUSION AND RELIEF SOUGHT ............................................................30

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Graham v. John Deere Co.*
  393 U.S. 1 (1966)........................................................................................14, 28

*In re Katz*
  687 F.2d 450 (C.C.P.A. 1982) ......................................................................28

*In re Klein*
  647 F.3d 1343 (Fed. Cir. 2011) .....................................................................14

*In re Napier*
  55 F.3d 610 (Fed. Cir. 1995) ....................................................................14, 16

*In re Oelrich*
  666 F.2d 578 (C.C.P.A. 1981) ...................................................................25, 26

*In re Rijckaert*
  9 F.3d 1531 (Fed. Cir. 1993) ......................................................15, 18, 21, 24

*In re Robertson*
  169 F.3d 743 (Fed. Cir. 1999) ..............................................................25, 26, 27

*KSR Int'l Co. v. Teleflex Inc.*
  127 S. Ct. 1727 (2007)...................................................................................28

*Par Pharmaceutical, Inc. v. TWI Pharmaceuticals, Inc.*
  773 F.3d 1186 (Fed. Cir. 2014) ...............................................15, 16, 17, 19, 20

*Pfizer, Inc. v Apotex, Inc.*
  480 F.3d 1348 (Fed. Cir. 2007) .....................................................................19

*Schering Corp. v. Geneva Pharms.*
  339 F.3d 1373 (Fed. Cir. 2003) .................................................................16, 18

FEDERAL STATUTES, REGULATIONS, AND RULES

28 U.S.C.
  § 1295(a)(4)(A).............................................................................................1

35 U.S.C.
  § 102.................................................................................2, 5, 10
  § 103.................................................................2, 5, 6, 10, 11, 30
  § 112.................................................................................................5
  § 141(b)..........................................................................................1
  § 314.................................................................................................5

37 C.F.R.
  § 41.81...........................................................................................1

## STATEMENT OF RELATED CASES

This appeal is taken from the *inter partes* reexamination of U.S. Patent No. 7,018,704 ("704 patent"). The 704 patent is the subject matter of a litigation in U.S. District Court for the Central District of California styled *Kaneka Corp. v. SKC Kolon PI and SKC Inc.*, Case No. 2:11-cv-03397-JHN-RZX. Litigation issues related to the 704 patent are currently stayed pending the outcome of the present reexamination proceeding by an order dated December 5, 2014.

## STATEMENT OF APPELLATE JURISDICTION

This is an appeal under 35 U.S.C. § 141(b) from the September 23, 2014, Decision on Request for Rehearing ("Decision on Rehearing") from the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO") involving the *inter partes* reexamination of U.S. Patent No. 7,018,704, having Control No. 95/001,707. The Decision on Rehearing is a final and appealable decision. 37 C.F.R. § 41.81. The Notice of Appeal was timely filed on November 20, 2014. This Court has jurisdiction under 35 U.S.C. § 141(b) and 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES

In its analysis of anticipation in the Decision on Appeal, the PTAB found that the Akahori prior art reference fails to inherently disclose a polyimide ("PI") film having a stiffness value in the claimed range. Accordingly, the PTAB reversed

the 35 U.S.C. § 102 rejection of claims 1-2, 4 and 6-11 based on Akahori. However, in its analysis of obviousness in the Decision on Appeal, the PTAB found that Akahori suggests a PI film having a stiffness value in the claimed range. Accordingly, the PTAB affirmed the 35 U.S.C. § 103 rejection of claims 1-11 based on Akahori alone or in combination with a secondary reference and maintained the affirmed rejections in the Decision on Rehearing. The only issue on appeal is whether Akahori, which fails to disclose a PI film inherently having a stiffness value in the claimed range in the context of the anticipation analysis, meets the high standard to establish the disclosure of a PI film inherently having a stiffness value in the claimed range in the context of the obviousness analysis.

**Issue 1**: In the Decision on Appeal, the PTAB made a finding that Akahori does not describe with sufficient specificity a PI film having an average thickness of 20 microns ("µm") that would inherently have a stiffness value within the claimed range. This finding demonstrates that Akahori does not explicitly disclose a PI film having an average thickness of 20 µm and consequently, Akahori fails to meet the high standard required to rely on inherency to establish the existence of a claim limitation in an obviousness analysis. Did the PTAB err when it affirmed the obviousness rejections based on Akahori?

**Issue 2**: In the Decision on Appeal, the PTAB affirmed the central reexamination unit ("CRU") examiners' use of optimized values for certain

variables in the purported "stiffness" equation. Although a thickness of 20 μm is not explicitly disclosed by Akahori, the CRU examiners used the optimized value of 20 μm for the value of the thickness variable. Similarly, although a (k) value is also not explicitly disclosed by Akahori, the CRU examiners used the optimized value of $1.85 \times 10^{-7}$ for the value of the (k) variable. Applying these optimized values in the purported "stiffness" equation, the CRU examiners concluded that the Akahori PI films in Example 4 and Example 7 have an inherent stiffness value within the claimed range. Inherency cannot be established based on what would result due to an optimization of conditions; inherency must be established based on what was necessarily present or the natural result of the combination of elements explicitly disclosed in the prior art. Did the PTAB err when it affirmed the obviousness rejections based on the use of optimized values to determine an inherent stiffness value for the Akahori PI films?

**Issue 3**: In the Decision on Appeal, the PTAB affirmed the calculated stiffness values asserted by the CRU examiners as inherent stiffness values for the Akahori PI films in Example 4 and Example 7. To arrive at the calculated stiffness values, the CRU examiners selected and used in the purported "stiffness" equation a single combination of variable values that represent merely one possible set of circumstances for each PI film. The CRU examiners ignored alternative yet similarly possible combinations of variable values that represent alternative sets of

3

circumstances and result in calculated stiffness values outside the claimed range. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient. Did the PTAB err when it affirmed the obviousness rejections based on calculated stiffness values resulting from only one of many possible sets of circumstances when alternative sets of circumstances resulting in calculated stiffness values outside the claimed range were also possible?

**Issue 4**: In the Decision on Appeal, the PTAB affirmed the use of disclosure from the 704 patent in the obviousness analysis. The CRU examiners relied upon the disclosure in the 704 patent to derive the purported "stiffness" equation. The CRU examiners also relied upon the examples disclosed in the 704 patent to derive the value of the variable (k) that was used in the purported "stiffness" equation to assert that the Akahori PI films inherently possess a stiffness value in the claimed range. A *prima facie* case of obviousness cannot be established based on the disclosure from the inventor. Did the PTAB err when it affirmed the obviousness rejections based in part on information disclosed by the inventors of the 704 patent?

## STATEMENT OF THE CASE

SKC Kolon PI, Inc. ("SKC") requested *inter partes* reexamination of the 704 patent. The CRU examiners accepted each of the alleged substantial new questions

of patentability and ordered reexamination of claims 1-5 of the 704 patent. Having ordered reexamination, the CRU examiners rejected the claims under § 102 and/or § 103 and each of the §§ 102/103 rejections are based in part on an inherency assertion. In the Right of Appeal Notice ("RAN"), the CRU examiners maintained the § 102 rejection of claims 1-2, 4 and newly added claims 6-11 based on Akahori and maintained the § 103 rejections of claims 1-11 based on Akahori alone or Akahori in combination with a secondary reference. (A658-A665).  Each of the maintained § 102 and § 103 rejections in the RAN are based in part on an inherency assertion. *Id*. In the RAN, the CRU examiners additionally rejected claims 4-5 under 35 U.S.C. § 112 and 35 U.S.C. § 314. (A654-A657). Kaneka appealed to the PTAB.

The PTAB, after briefing and oral hearing, reversed the § 102 rejection of claims 1-2, 4 and 6-11 based on Akahori and affirmed the § 103 rejections of claims 1-11 based on Akahori alone or in combination with a secondary reference. The PTAB also affirmed the 35 U.S.C. § 112 and 35 U.S.C. § 314 rejections of claims 4-5 and declined to "reach the merits of the cumulative obviousness rejections based on other references." (A22) Kaneka requested rehearing. The PTAB denied Kaneka's request for rehearing, resulting in the final rejection of claims 1-11 as obvious over Akahori alone or in combination with a secondary reference and the final rejection of claims 4-5 under § 112 and § 314.

Kaneka's appeal to this Court is taken from the PTAB's affirmation of the § 103 rejections of claims 1-11 as obvious over Akahori alone or in combination with a secondary reference. The § 112 and § 314 rejections of claims 4-5 are not appealed.

## STATEMENT OF THE FACTS

The legal conclusion of obviousness affirmed by the PTAB is based on an assertion that the PI films in Example 4 and Example 7 of Akahori inherently possess a stiffness value in the claimed range of 0.4 to 1.2 g/cm. Accordingly, the issue on appeal is whether the Akahori reference meets the high standard under an obviousness analysis to establish the existence of a PI film having an inherent stiffness value in the claimed range.

## I.    The 704 Patent

The 704 patent is directed toward a PI film for a flexible printed circuit ("FPC"). PI films are adhered to a conductive layer to form an FPC. Prior to the invention, evaluation of PI films for FPCs required costly and time consuming destructive flex testing of a manufactured FPC. The inventors are the first to evaluate PI films for suitability in an FPC in isolation from the manufactured FPC. (A1368). The inventors are the first to use a loop stiffness tester to evaluate a PI film in isolation to determine suitability of the PI film for use in an FPC. (A1368, A1409).

6

## II.    Original Prosecution

During original prosecution, the original claims 1-6 were rejected based on a single prior art reference and an assertion of inherency. Kaneka responded with a declaration describing experiments demonstrating that the cited prior art reference failed to establish the asserted inherency. The declaration was successful and in the ensuing notice of allowance, claim 2 was incorporated into claim 1 by examiner amendment and the 704 patent was subsequently issued with claims 1-5.

## III.    *Inter partes* Reexamination

SKC requested *inter partes* reexamination of claims 1-5 of the 704 patent. The request derives the purported "stiffness" equation from the specification of the 704 patent, and creates the purported "stiffness" equation for the first time ever. The request includes Appendix 1 that, also for the first time ever, calculates a (k) value for each of the twelve examples disclosed in the 704 patent based on the purported "stiffness" equation. The purported "stiffness" equation and the range of (k) values derived from the examples disclosed in the 704 patent are shown in table form in Appendix 1 (A120) and reproduced below:

**Appendix 1**

stiffness = k x (film thickness)$^3$ x (elastic modulus)

| '704 Example | Thickness | Modulus | (thickness)$^3$ x (elastic modulus) | Stiffness | Calculated "k" |
|---|---|---|---|---|---|
| 1 | 21 | 420 | 3889620 | 0.7 | 1.80 x 10-07 |
| 2 | 21 | 420 | 3889620 | 0.7 | 1.80 x 10-07 |
| 3 | 21 | 467 | 4324887 | 0.8 | 1.85 x 10-07 |
| 4 | 21 | 467 | 4324887 | 0.8 | 1.85 x 10-07 |
| 5 | 18 | 420 | 2449440 | 0.5 | 2.04 x 10-07 |
| 6 | 18 | 420 | 2449440 | 0.5 | 2.04 x 10-07 |
| 7 | 18 | 467 | 2723544 | 0.5 | 1.84 x 10-07 |
| 8 | 18 | 467 | 2723544 | 0.5 | 1.84 x 10-07 |
| 9 | 21 | 420 | 3889620 | 0.7 | 1.80 x 10-07 |
| 10 | 21 | 467 | 4324887 | 0.8 | 1.85 x 10-07 |
| 11 | 18 | 430 | 2507760 | 0.5 | 1.99 x 10-07 |
| 12 | 18 | 470 | 2741040 | 0.5 | 1.82 x 10-07 |
| | | | | | |
| | | | AVERAGE | | 1.88 x 10-07 |
| | | | | | |

This table in Appendix 1 also includes a calculated average of the (k) values that condenses the range of (k) values to a single optimized value of $1.88 \times 10^{-7}$. Appendix 1 also includes a graph of the range of (k) values. (A120).



This graph in Appendix 1 includes a calculated slope of the (k) values that similarly condenses the range of (k) values to a single optimized value of $1.853 \times 10^{-7}$. Ultimately, the CRU examiners adopted the optimized (k) value of

8

1.85x10$^{-7}$ (a rounded down version of the value calculated using the slope) and the CRU examiners used this single optimized (k) value in the purported "stiffness" equation in the context of the obviousness analysis.

The request also includes Appendix 2, which "assumes" the optimized (k) value of 1.85x10$^{-7}$ and proceeds to use that assumed value in the purported "stiffness" equation to calculate a purported stiffness value for the PI films disclosed in the prior art. (A121-A123).

**Appendix 2**

$$\text{stiffness} = k \times (\text{film thickness})^3 \times (\text{elastic modulus})$$

$$\text{assuming "k"} = 1.85 \times 10^{-7}$$

| Reference | | Thickness (μm) | Modulus (kg/mm²) | Calculated Stiffness |
|---|---|---|---|---|
| *Akahori* | Example 1 | 15 | 450 | 0.28 |

Tellingly, Appendix 2 demonstrates that Akahori Example 4 and Example 7, which the CRU examiners asserted inherently possess a stiffness value within the claimed range of 0.4 – 1.2 g/cm, have calculated stiffness values that fall outside the claimed range at a thickness of 15 μm. (A121-A123).

| Reference | | Thickness (μm) | Modulus (kg/mm²) | Calculated Stiffness |
|---|---|---|---|---|
| *Akahori* | Example 1 | 15 | 450 | 0.28 |
| | Example 4 | 15 | 410 | 0.26 |
| | | 20 | 410 | 0.61 |
| | | 25 | 410 | 1.19 |
| | Example 7 | 15 | 380 | 0.24 |
| | | 20 | 380 | 0.56 |
| | | 25 | 380 | 1.10 |

Nevertheless, the CRU examiners adopted the optimized (k) value $1.85 \times 10^{-7}$ (A652-A653) and used the optimized (k) value to assert that the Akahori Example 4 and Example 7 PI films inherently possess a stiffness value within the claimed range. Based on this asserted inherency, the CRU examiners rejected the 704 patent claims as anticipated by Akahori and as obvious over Akahori alone or in view of one or more secondary references. Kaneka argued that there is no single (k) value and that the purported "stiffness" equation and single optimized (k) value from the 704 patent could not be used in an obviousness analysis. (A336-A337). Despite these arguments, the CRU examiners made the rejections final in the RAN.

## IV.    Appeal to the PTAB

Kaneka appealed the final rejections set forth in the RAN. After briefing by the parties and the oral hearing, in its Decision on Appeal, the PTAB reversed the § 102 rejections and made a finding that "Akahori does not support a finding that Akahori describes with sufficient specificity a polyimide film having an average thickness of 20 μm that would inherently have a stiffness value within the claimed range." (A19). However, in its Decision on Appeal, the PTAB affirmed the § 103 rejections and made a contradictory finding that Akahori "suggests" a PI film having an average thickness of 20 μm that inherently has a stiffness value within the claimed range. (A20).

Specifically, the PTAB affirmed the rejection of claims 1-2, 4 and 6-11 under § 103 as obvious over Akahori alone; affirmed the rejection of claims 3 and 5 under § 103 as obvious over Akahori in view of Kataoka, as evidenced by Apical NP; affirmed the rejection of claims 3 and 5 under § 103 as obvious over Akahori in view of Merchant; and affirmed the rejection of claim 11 under § 103 as obvious over Akahori in view of either Ono '739 or JP '442. (A23). Importantly, for each of the § 103 rejections that rely on Akahori in combination with a secondary reference, only Akahori is relied upon as disclosing a PI film having a stiffness value within the claimed range. (A662-A665).

Kaneka requested rehearing and argued that the Akahori PI films do not inherently possess a stiffness value in the claimed range and that the inherency analysis employed by the CRU examiners improperly used optimized values and that the stiffness values asserted by the CRU examiners as inherent are mere possibilities and therefore the 103 analysis failed to establish *prima facie* obviousness. The PTAB denied Kaneka's request for rehearing and in its Decision on Rehearing stated "Thus, contrary to [Kaneka's] contention, the [PTAB] did not misapprehend or overlook an internal inconsistency in the Decision [on Appeal]. As pointed out by [SKC], the finding that Akahori did not inherently disclose the claimed stiffness value in the Decision [on Appeal] was based on the position that

11

the [CRU examiners] erred in finding that Akahori discloses PI films having a

thickness of 20 μm. (Decision [on Appeal] 18.)." (A31).

## SUMMARY OF ARGUMENT

The obviousness analysis employed by the CRU examiners and affirmed by

the PTAB contravenes this Court's longstanding precedence regarding inherency.

The analysis failed to establish *prima facie* obviousness, impermissibly used

optimized values in an equation to assert inherency, impermissibly asserted

inherency based on mere possibilities, and impermissibly used the 704 patent

disclosure as a roadmap to establish obviousness.

In its Decision on Appeal, the PTAB made a finding that the Akahori

reference fails to disclose a PI film having an inherent stiffness value within the

claimed range. This finding necessarily precluded establishing *prima facie*

obviousness based on the same Akahori reference "suggesting" a PI film having an

inherent stiffness value within the claimed range. Yet the CRU examiners did

exactly that and the PTAB erroneously affirmed.

The CRU examiners impermissibly used disclosure from the 704 patent to

derive the purported "stiffness" equation to establish inherency and to derive a

single optimized (k) value that was used in the purported "stiffness" equation in the

context of the obviousness analysis. The CRU examiners expressly identified a

plurality of possible (k) values but selectively excluded the low and high (k) values

12

in the range and instead calculated an optimized (k) value within the known range and impermissibly used that optimized (k) value in the purported "stiffness" equation to assert that the Akahori reference discloses a PI film having an inherent stiffness value within the claimed range.

The PTAB expressly stated in its Decision on Appeal that Akahori does not describe with sufficient specificity a PI film having an average thickness of 20 μm and therefore Akahori does not inherently disclose a stiffness value in the claimed range. Subsequently, the PTAB expressly stated in its Decision on Rehearing that the finding that Akahori does not inherently disclose the claimed stiffness value was based on the position that the CRU examiners erred in finding that Akahori discloses PI films having a thickness of 20 μm. However, the PTAB erroneously affirmed the use of an optimized film thickness of 20 μm by the CRU examiners in the obviousness analysis. This 20 μm film thickness was erroneously used by the CRU examiners in the purported "stiffness" equation to assert that Akahori discloses PI films having an inherent stiffness value within the claimed range.

The CRU examiners impermissibly ignored alternative possible stiffness values of the Akahori PI films that fall outside of the claimed range and consequently the CRU examiners erroneously asserted that the Akahori reference discloses PI films that necessarily have an inherent stiffness value within the claimed range.

13

This Court can now review the record and find as a matter of law that the Akahori reference fails to meet the high standard required under an obviousness analysis to establish the existence of a PI film having an inherent stiffness value in the claimed range. There is sufficient evidence in the record of the *inter partes* reexamination – evidence that was available to both the CRU examiners and the PTAB – for this Court to find that Akahori fails to disclose a PI film having a stiffness value within the claimed range and therefore that claims 1-11 are not obvious over Akahori alone or in combination with a secondary reference.

## ARGUMENT

### I.    Standard of Review

This appeal is about the reliance on inherency to establish the existence of a claim limitation in the prior art in an obviousness analysis and whether claims 1-11 are patentable on the record at hand.  Obviousness is a question of law based on underlying factual determinations. *Graham v. John Deere Co.*, 393 U.S. 1, 17-18 (1966). The inherent teaching of a prior art reference is a question of fact. *In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995). The PTAB's decision to affirm the obviousness rejection of the CRU examiners is reviewed *de novo*, while the PTAB's underlying factual findings are reviewed for substantial evidence. *In re Klein*, 647 F.3d 1343, 1347 (Fed. Cir. 2011).

14

## II.    The Akahori PI film does not inherently possess the claimed stiffness

In the Decision on Appeal, the PTAB made a factual finding that "Akahori does not support a finding that Akahori describes with sufficient specificity a polyimide film having an average thickness of 20 μm that would inherently have a stiffness value within the claimed range." (A19). The PTAB also made a finding that "Because the prior art suggests a film having an average thickness of approximately 20 μm … the calculations of Requester, for the reasons discussed above, provide sufficient evidence and reasoning to support a finding that the polyimide films suggested by the prior art inherently have a stiffness value within the claimed range…" (A20). Accordingly, the PTAB made contradictory findings that Akahori does not disclose a PI film that inherently has a stiffness value within the claimed range in the context of anticipation, and that Akahori does suggest a PI film that inherently has a stiffness value within the claimed range in the context of obviousness.

This Court has very recently addressed the issue of using inherency in the context of obviousness in *Par Pharmaceutical, Inc. v. TWI Pharmaceuticals, Inc.*, 773 F.3d 1186 (Fed. Cir. 2014). In *Par Pharmaceutical*, this Court explained that the use of inherency must be carefully circumscribed in the context of obviousness. *Par Pharmaceutical, Inc. v. TWI Pharmaceuticals, Inc.*, 773 F.3d 1186 (Fed. Cir. 2014). *See, e.g., In re Rijckaert*, 9 F.3d 1531, 1533-34 (Fed. Cir. 1993) ("The mere

fact that a certain thing may result from a given set of circumstances is not sufficient [to establish inherency]." (internal quotation omitted)).  More specifically, this Court stated that "[a] party must, therefore, meet a high standard in order to rely on inherency to establish the existence of a claim limitation in the prior art in an obviousness analysis – the limitation at issue necessarily must be present, or the natural result of the combination of elements **explicitly disclosed** by the prior art." *Par Pharmaceutical*, at 1195-96. *See, also*, *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003) (In general, a limitation is inherent if it is the natural result flowing from the **explicit disclosure** of the prior art.).

As explained by the PTAB in the Decision on Appeal, Akahori does not explicitly disclose a PI film with a thickness of 20 μm that would inherently have a stiffness value within the claimed range. (A19). As additionally explained by the PTAB in the Decision on Rehearing, the finding that Akahori does not inherently disclose the claimed stiffness value in the Decision on Appeal was based on the position that the CRU examiners erred in finding that Akahori discloses PI films having a thickness of 20 μm. (A31). Consequently, it is a settled factual finding of the PTAB that Akahori does not disclose a PI film that inherently has a stiffness value within the claimed range. *Napier*, at 613.

16

Moreover, the assertion that Akahori "suggests" a PI film having a thickness of 20 μm fails to meet the "explicitly disclosed" requirement expressly set forth by this Court in *Par Pharmaceutical* and *Schering*. Thus, because a film thickness of 20 μm is only "suggested" and not "explicitly disclosed," a film thickness of 20 μm cannot be employed in the purported "stiffness" equation to calculate a stiffness value that is asserted as being inherent to the PI film. Furthermore, the use of the "suggested" 20 μm film thickness by the CRU examiners fails to meet the high standard required in order to rely on inherency to establish the existence of a claim limitation in the prior art in an obviousness analysis. Accordingly, the PTAB clearly erred in affirming the obviousness rejection and should be reversed.

III.    **The PTAB erroneously affirmed the CRU examiners erroneous use of optimized values in the inherency analysis**

The CRU examiners erroneously used optimized values in the purported "stiffness" equation to assert that the Example 4 and Example 7 PI films in Akahori inherently possess a stiffness value in the claimed range and the PTAB erroneously affirmed. In the context of an inherency analysis, this Court recently explained that a party must meet a high standard in order to rely on inherency to establish the existence of a claim limitation in an obviousness analysis – the limitation at issue must be necessarily present or the natural result of the combination of elements **explicitly disclosed** by the prior art. *Par Pharmaceutical,*

17

*Inc. v. TWI Pharmaceuticals, Inc.*, 773 F.3d 1186 (Fed. Cir. 2014). *See, also*, *Schering*, at 1379. Over two decades earlier, this Court similarly found that an examiner's assumptions do not constitute the disclosure of the prior art and reversed the PTAB[1] for affirming an examiner who assumed specific values for certain variables in order to assert that certain claim limitations were inherent in the prior art reference. *In re Rijckaert*, 9 F.3d 1531 (Fed. Cir. 1993) (reversed rejection because inherency was based on what would result due to optimization of conditions, not what was necessarily present in the prior art).

### A.    The 20 μm Akahori film thickness is an optimized value

In the *inter partes* reexamination proceedings, the CRU examiners and the PTAB both acknowledge that Akahori only discloses a film thickness having a range of 15 – 25 μm. And even though the PTAB made a finding that Akahori fails to explicitly disclose a film thickness of 20 μm as required by the standard set forth in *Par Pharmaceutical* to establish inherency in an obviousness context, the CRU examiners still erroneously used an optimized film thickness value of 20 μm in the purported "stiffness" equation and the PTAB erroneously affirmed.

In affirming the obviousness rejection by the CRU examiners, the PTAB asserted that Akahori "suggests" a film thickness of 20 μm.  The PTAB justified

---

[1] For simplicity, the Board of Patent Appeals and Interferences predecessor to the PTAB is also referred to herein as PTAB.

the use of the optimized 20 µm film thickness value by citing *Pfizer, Inc. v Apotex, Inc.*, 480 F.3d 1348, 1368 (Fed. Cir. 2007) (discovery of an optimum value of a variable in a known process is usually obvious). (A19-A20).  By way of this citation, the PTAB expressly articulated its erroneous conflation of the obviousness analysis and the inherency analysis.

Specifically, the PTAB used an obviousness analysis to assert that Akahori "suggests" a film thickness of 20 µm (A31) and then proceeded to erroneously employ the "suggested" 20 µm thickness in the purported "stiffness" equation as part of its inherency analysis to assert that the Akahori PI film inherently possesses a stiffness value in the claimed range. Accordingly, the PTAB began with an obviousness analysis to assert that Akahori "suggests" a film thickness of 20 µm and then switched to an inherency analysis to assert that with a film thickness of 20 µm, the purported "stiffness" equation produced a stiffness value of the Akahori PI film within the claimed range. However, this Court cautioned in *Par Pharmaceutical* that the use of inherency must be carefully circumscribed in the context of obviousness and that the CRU examiners and the PTAB must meet a high standard in order to rely on inherency to establish the existence of a claim limitation in an obviousness analysis. *Par Pharmaceutical*, at 1195-96.

The CRU examiners failed to carefully circumscribe the use of inherency by interweaving the obviousness and inherency analyses. This Court further explained

19

in *Par Pharmaceutical* that the limitation at issue must be necessarily present or the natural result of the combination of elements **explicitly disclosed** by the prior art. *Par Pharmaceutical*, at 1195-96. In the Decision on Appeal, the PTAB made a finding that Akahori fails to explicitly disclose a PI film with a thickness of 20 μm (A19) and in the Decision on Rehearing the PTAB reiterated this finding by expressly stating that the CRU examiners erred in finding that Akahori discloses PI films having a thickness of 20 μm. (A31).

The PTAB also failed to carefully circumscribe the use of inherency in the context of obviousness by allowing the "suggestion" of elements under an obviousness analysis to supplant the explicitly disclosed elements standard set forth in *Par Pharmaceutical* under an inherency analysis.  Furthermore, by affirming the use of the optimized 20 μm thickness value in contravention of *Rijckaert*, the PTAB also failed to hold the CRU examiners to the high standard for relying on inherency in an obviousness analysis set forth in *Par Pharmaceutical*. Accordingly, the PTAB erred in affirming the use of the "suggested" 20 μm thickness value in the purported "stiffness" equation and in affirming the assertion that the Example 4 and Example 7 PI films of Akahori inherently possess a stiffness value in the claimed range. The PTAB should be reversed.

## B.    The $1.85 \times 10^{-7}$ (k) value is an optimized value

In *Rijckaert*, this Court reversed the PTAB for affirming an examiner who assumed specific values for certain variables in order to assert that certain claim limitations were inherent for the prior art reference. *In re Rijckaert*, 9 F.3d 1531 (Fed. Cir. 1993). Notably, Appendix 2 of the Request expressly states that the "assumed" value of (k) is $1.85 \times 10^{-7}$ and this assumed value was ultimately adopted by the CRU examiners and used in the purported "stiffness" equation to calculate a stiffness value that was asserted to be inherent.

### Appendix 2

$$\text{stiffness} = k \times (\text{film thickness})^3 \times (\text{elastic modulus})$$

$$\text{assuming "k"} = 1.85 \times 10^{-7}$$

Moreover, the prior art reference Akahori fails to disclose or even suggest any (k) value whatsoever and therefore Akahori fails to explicitly disclose a (k) value of $1.85 \times 10^{-7}$ and this value cannot be used in an inherency analysis according to the standard set forth in *Par Pharmaceutical*. Additionally, the 704 patent itself, from which the CRU examiners derived the (k) value, fails to explicitly disclose a (k) value of $1.85 \times 10^{-7}$.  At best, the 704 patent may suggest a range of (k) values from $0.88 \times 10^{-7}$ (A718) to $2.04 \times 10^{-7}$ (A652). The 704 patent also does not explicitly disclose any method for calculating (k) values and does not explicitly disclose averaging (k) values and does not explicitly disclose plotting (k) values on a graph

21

and does not explicitly disclose using the slope of the (k) value graph to derive a sloped (k) value.

However, notwithstanding this lack of explicit disclosure that is required under the standard set forth in *Par Pharmaceutical*, the CRU examiners calculated (k) values from the examples in the 704 patent, plotted those (k) values on a graph and then adopted the slope of the (k) value graph (rounded down), specifically $1.85 \times 10^{-7}$ (A653), as the (k) value. The (k) value was subsequently used in the purported "stiffness" equation to assert that the calculated stiffness values for the Akahori Example 4 and Example 7 PI films are inherent.  The interwoven obviousness and inherency analysis employed by the CRU examiners with respect to the optimized (k) value and affirmed by the PTAB failed to carefully circumscribe the inherency analysis within the context of obviousness and failed to meet the high standard required to establish inherency as set forth in *Par Pharmaceutical*.

Specifically, the CRU examiners failed to meet the high standard by using the single optimized (k) value in the purported "stiffness" equation when a range of values were identified for both the thickness and modulus variables at different places in the obviousness analysis. (*See*, A121 for thickness ranges for Akahori examples 1-10 and A123 for modulus ranges for Hino examples 1, 3 and 4). The CRU examiners clearly recognized that it was appropriate to use a range of values

22

for the variables in the purported "stiffness" equation (A684), yet only the single optimized (k) value was used for the third variable in the present obviousness analysis.

As expressly set forth in the RAN, the CRU examiners explained in the context of an obviousness rejection that "… Yuyama's polyimide films have a stiffness value ranging from 0.1 g/cm to 3.1 g/cm, calculated using 10 μm and 408 kg/mm$^2$ for the lower limit and 30 μm and 612 kg/mm$^2$ for the upper limit." (A684).  In this obviousness analysis, the CRU examiners used a range for thickness and a range for modulus but selectively excluded the use of a range for (k) – even though the CRU examiners were aware of the range of (k) values and expressly identified the low and high (k) values in the RAN. (A652 (high) and A718 (low)).

This analysis employed by CRU examiners and affirmed by the PTAB contravenes this Court's precedent. As discussed above, the standard set forth by this Court in *Par Pharmaceutical* for using inherency in an obviousness analysis requires that the limitation at issue necessarily must be present, or the natural result of the combination of elements **explicitly disclosed** by the prior art. The assumed (k) value of $1.85 \times 10^{-7}$ is not explicitly disclosed in Akahori.

The CRU examiners' error of assuming the optimized (k) value and using the optimized (k) value in the purported "stiffness" equation is underscored by the

23

fact that Comparative Example 1 in the 704 patent has a measured stiffness value of 0.3 g/cm that falls **outside** of the claimed range. (A43, Table 1). In contrast, Comparative Example 1 in the 704 patent has a calculated stiffness value of 0.47 g/cm that falls **inside** the claimed range when the optimized (k) value assumed by the CRU examiners is employed in the purported "stiffness" equation. (A337).

The PTAB should be reversed for affirming the conclusion of obviousness based on this assumed and not explicitly disclosed (k) value as the Court did in *Rijckaert*. *In re Rijckaert*, 9 F.3d 1531 (Fed. Cir. 1993) (reversed rejection because inherency was based on what would result due to optimization of conditions, not what was necessarily present in the prior art).

In summary, the PTAB erroneously affirmed the CRU examiners' use of optimized variables in the purported "stiffness" equation. The optimized thickness value of 20 μm is not explicitly disclosed in Akahori and cannot be used to establish inherency, yet the PTAB erroneously affirmed the CRU examiners' use of the 20 μm thickness value in the purported "stiffness" equation to assert that the Akahori PI films of Example 4 and Example 7 have an inherent stiffness value within the claimed range.  Similarly, the optimized (k) value is also not explicitly disclosed in Akahori and cannot be used to establish inherency, yet the PTAB erroneously affirmed the CRU examiners' use of the $1.85 \times 10^{-7}$ (k) value in the inherency analysis.  The PTAB should be reversed.

24

**IV.    The stiffness values calculated for Akahori are mere possibilities**

It is well established that inherency may not be established by probabilities or possibilities and that the mere fact that a certain thing **may** result from a given set of circumstances is not sufficient to establish inherency. *In re Robertson*, 169 F.3d 743 (Fed. Cir. 1999) (citations omitted); *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981).  As mentioned above, the **measured stiffness** of the Comparative Example 1 PI film from the 704 patent is 0.3 g/cm in contrast to the **calculated stiffness** of 0.47 g/cm using the single optimized (k) value.  However, using the range of (k) values identified by the CRU examiners in the RAN, the calculated stiffness range of the Comparative Example 1 PI film from the 704 patent is 0.23 g/cm – 0.52 g/cm.  As is evident, while the measured stiffness for Comparative Example 1 is significantly different from the calculated stiffness, the measured stiffness of 0.3 g/cm falls within this range of possible stiffness values.

Accordingly, each of the stiffness values calculated by the CRU examiners using the single optimized (k) value is just one possible stiffness value in a range of possible stiffness values for the subject PI film.  Specifically, for the PI films in Example 4 and Example 7 of Akahori, the range of possible stiffness values for Example 4 is 0.12 g/cm – 1.31 g/cm when the range of possible (k) values and the range of possible thickness values are used as shown in the chart below. (A1418).  Similarly, the range of possible stiffness values for Example 7 is 0.11 g/cm – 1.21

g/cm when the range of possible (k) values and the range of possible thickness values are used as shown in the chart below. *Id*. Notably, at least one calculated stiffness value falls outside the claimed range for each of the possible thickness values.

| Akahori Example | Thickness | Modulus | Stiffness at low (k) value | Stiffness at high (k) value |
|---|---|---|---|---|
| Example 4 | 15 | 410 | **0.12** | **0.28** |
| | 20 | 410 | **0.29** | 0.67 |
| | 25 | 410 | 0.56 | 1.31 |
| Example 7 | 15 | 380 | **0.11** | **0.26** |
| | 20 | 380 | **0.27** | 0.62 |
| | 25 | 380 | 0.52 | **1.21** |

The ranges of calculated stiffness values for both the Akahori example PI films have possible values that fall outside of the claimed range of 0.4 g/cm – 1.2 g/cm and therefore, in the context of an obviousness analysis, the PTAB erred when affirming that claims 1-11 are obvious because any calculated stiffness value that falls within the claimed range is only one possible calculated stiffness value and the existence of calculated stiffness values falling outside the claimed range demonstrates that the claimed stiffness value is not **necessarily present**. *In re Robertson*, 169 F.3d 743 (Fed. Cir. 1999).  The mere fact that the Akahori PI films

26

**may** have a calculated stiffness value in the claimed range is not sufficient to establish inherency, particularly when it is demonstrably evident that the Akahori PI films also **may not** have a calculated stiffness value in the claimed range. *Id*.

Specifically, in Appendix 2 of the Request, which used only the single optimized (k) value and is reproduced below in relevant part, Akahori's Example 4 and Example 7 PI films are reported to have possible calculated stiffness values at 15 μm thickness of 0.26 g/cm and 0.24 g/cm, respectively. Each of these values fall **outside** of the claimed range of 0.4 g/cm – 1.2 g/cm. (A121).

| Reference | | Thickness (μm) | Modulus (kg/mm²) | Calculated Stiffness |
|---|---|---|---|---|
| *Akahori* | Example 1 | 15 | 450 | 0.28 |
| | Example 4 | 15 | 410 | 0.26 |
| | | 20 | 410 | 0.61 |
| | | 25 | 410 | 1.19 |
| | Example 7 | 15 | 380 | 0.24 |
| | | 20 | 380 | 0.56 |
| | | 25 | 380 | 1.10 |

Accordingly, the PTAB erred in affirming the obviousness rejections asserted by the CRU examiners because many of the possible calculated stiffness values for the Akahori PI films in Example 4 and Example 7 fall outside of the claimed range. Even if only the single optimized (k) value that was assumed in Appendix 2 is used in the purported "stiffness" equation, many of the calculated stiffness values still fall outside of the claimed range. Because many of the

calculated stiffness values fall outside of the claimed range regardless of the (k) value, the PTAB should be reversed.

## V. The CRU examiners impermissibly used the 704 patent disclosure in the obviousness analysis

The obviousness rejection maintained by the CRU examiners and affirmed by the PTAB is impermissibly grounded in the disclosure of the 704 patent. Specifically, the purported "stiffness" equation and the optimized (k) value are both derived directly from the disclosure of the 704 patent. Since *Graham v. John Deere Co.*, 393 U.S. 1, 17-18 (1966), the courts have steadfastly opposed the use of an inventor's own disclosure in resolving questions of obviousness. According to *In re Katz*, "one's own invention, whatever the form of disclosure to the public, may not be 'prior art' against oneself, absent a statutory time bar." *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982). The Court in *KSR*, meanwhile, clearly warned against a "temptation to read into the prior art the teachings of the invention in issue." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).

Despite these prohibitions, the disclosures of the 704 patent are integral to the obviousness analysis asserted by the CRU examiners. By relying on the inventors' own disclosures in the analysis, the CRU examiners failed to successfully establish *prima facie* obviousness. Consequently, the PTAB erred in

28

affirming the conclusion of obviousness for claims 1-11 that is integrally based on the inventors' own disclosure and the PTAB should be reversed.

## CONCLUSION AND RELIEF SOUGHT

If the Court agrees that the CRU examiners and the PTAB erred in the obviousness analysis and that claims 1-11 are patentable as a matter of law over Akahori alone or in combination with a secondary reference, then it should reverse the PTAB's decision to affirm the § 103 rejections based on Akahori alone or in combination with a secondary reference.

Respectfully submitted,

Date: March 6, 2015

/s/ Pattric J. Rawlins
Pattric J. Rawlins
Procopio, Cory, Hargreaves &
Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101
pattric.rawlins@procopio.com

30

**PROOF OF SERVICE**

I hereby certify that on this 6th of March, 2015, I caused the foregoing

**PRINCIPAL BRIEF FOR APPELLANT KANEKA CORPORATION** to be

filed electronically with the Clerk of the Court using the Court's CM/ECF System,

which will serve via e-mail notice of such filing to the following CM/ECF-

registered users:

Mark D. Sweet                                        Nathan K. Kelley
Finnegan, Henderson, Farabow,                        U.S. Patent & Trademark Office
Garren, & Dunner LLP                                 Mail Stop 8
901 New York Avenue, N.W.                            P.O. Box 1450
Washington, D.C. 20001-4413                          Alexandria, VA 22313-1450
                                                     COURTESY COPY EMAIL TO:
                                                     kristi.sawert@uspto.gov


I further certify that, upon acceptance from the Court of the e-filed

document, the required paper copies of the foregoing will be filed with the Court

via Priority Mail Express (f/k/a Express Mail) to the Clerk of Court, United States

Court of Appeals for the Federal Circuit, 717 Madison Place, NW, Washington,

DC, 20439 and the required two paper copies of the foregoing were served on each

of the parties listed above, also by Priority Mail Express.

Respectfully submitted,

Date:  6 March 2015                                   /s/ Pattric J. Rawlins
                                                     Pattric J. Rawlins
                                                     Procopio, Cory, Hargreaves &
                                                     Savitch LLP
                                                     525 B Street, Suite 2200
                                                     San Diego, CA 92101
                                                     pattric.rawlins@procopio.com

**ADDENDUM PURSUANT TO FCR 28(a)(12)**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,707 | 08/15/2011 | 7018704 | 111039RX | 8559 |

38834          7590          11/12/2013
WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP
1250 CONNECTICUT AVENUE, NW
SUITE 700
WASHINGTON, DC 20036

| EXAMINER |
|---|
| DIAMOND, ALAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3991 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/12/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

SKC KOLON PI, INC.
Requester

v.

KANEKA CORPORATION
Patent Owner and Appellant

_____

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2
Technology Center 3900

_____

Before RICHARD M. LEBOVITZ, JEFFREY B. ROBERTSON, and
RAE LYNN P. GUEST, *Administrative Patent Judges*.

GUEST, *Administrative Patent Judge*.

DECISION ON APPEAL

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

This is a decision on appeal by the Patent Owner from the Patent
Examiner's decision to reject pending claims 1-11 in an *inter partes*
reexamination of U.S. Patent 7,018,704 B2. The Board's jurisdiction for
this appeal is under 35 U.S.C. §§ 6(b), 134, and 315.

We AFFIRM.

## I. BACKGROUND

The patent in dispute in this appeal is U.S. Patent 7,018,704 B2
(hereinafter, "the '704 Patent"), which issued March 28, 2006. The claims
are drawn to a polyimide film for use as an insulating material for a flexible
printed circuit. '704 Patent, col. 1, ll. 17-60.

A request for *inter partes* reexamination under 35 U.S.C. §§ 311-318
and 37 C.F.R. §§ 1.902-1.997 for the '704 Patent was filed August 12, 2011
by a Third-Party Requester (Request for *Inter Partes* Reexamination). The
Third-Party Requester is SKC Kolon PI, Inc. Requester Respondent Brief 1,
dated January 28, 2013 (hereinafter "Req. Res. Br."). The Patent Owner is
the Kaneka Corporation. Patent Owner Appeal Brief 2, dated December 26,
2012 (hereinafter "PO App. Br."). Claims 1-11 are pending and stand
rejected. An oral hearing was held September 11, 2013. A transcript of the
hearing will be entered into the record in due course.

Patent Owner appeals the Examiner's decision to reject claims 1-11
under 35 U.S.C. § 102 and § 103 and the rejection of claims 4 and 5 under
35 U.S.C. § 112 and 314, as set forth below.

## II.    REJECTIONS

The Examiner maintains the following rejections:

1.    claims 4 and 5 under 35 U.S.C. § 112, second paragraph for being
      indefinite. RAN 7-8.

2

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

2.    claims 4 and 5 under 35 U.S.C. § 112, first paragraph, for failing to comply with the written description and enablement requirements. RAN 9-10.

3.    claims 4 and 5 under 35 U.S.C. § 314(a) for enlarging the scope of the originally patented claims. RAN 10.

4.    claims 1-2, 4 and 6-11 under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103(a) as obvious over Akahori.[1] RAN 11-15.

5.    claims 1-2, 4 and 6-11 under 35 U.S.C. § 103(a) as obvious over Sawasaki[2] in view of Yuyama.[3]  RAN 18-22.

6.    claims 1-2, 4 and 6-11 under 35 U.S.C. § 103(a) as obvious over Ono '844[4] in view of Yuyama.  RAN 25-28.

7.    claims 1-2, 4 and 6-11 under 35 U.S.C. § 103(a) as obvious over Uhara '054[5] in view of Ono '844.  RAN 31-34.

8.    claims 1-2, 4 and 6-11 under 35 U.S.C. § 103(a) as obvious over Yuyama in view of Uhara '054.  RAN 36-39.

9.    claims 1-2, 4, 6-11 under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, with respect to only claims 7-10 under 35 U.S.C. § 103(a) as obvious over Hino, as evidenced by Ono '844.  Ran 42-45.

10.    claims 1-2, 4, and 6-11 are unpatentable under 35 U.S.C. § 103(a) as obvious over Ono '844 in view of Yamaguchi.  RAN 50-52.

11.    claims 1-2, 4, and 6-11 are unpatentable under 35 U.S.C. § 103(a) as obvious over Ono '844 in view of Uhara '179.  RAN 55-57.

---

[1] US Patent 5,081,229, issued January 14, 1992, to Kiyokazu Akahori et al. ("Akahori").
[2] US 6,277,495 B1, issued August 21, 2001, to Koichi Sawasaki et al. ("Sawasaki").
[3] US Published Application 2002/0012780 A1, published January 31, 2002, in the name of Masahiro Yuyama ("Yuyama").
[4] US 6,350,844 B1, issued February 26, 2002, to Kazuhiro Ono et al. ("Ono '844").
[5] US Published Application 2002/0045054 A1, published April 18, 2002, in the name of Kenji Uhara et al. ("Uhara '054").

3

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

Claims 3 and 5 stand rejected over the above identified prior art further in view of Kataoka,[6] as evidenced by Apical NP,[7] or further in view of Merchant.[8]  Claim 11 stands rejected over the above identified prior art further in view of either Ono '739[9] or JP '442.[10]  Patent Owner has not advanced separate, substantive arguments against the rejections of claims 3, 5, and 11. *See* PO App. Br. 23, 25, 27, 28-29, 30, 32-33.  Accordingly, these claims stand or fall together with the rejections of claims 1 and 6.

Patent Owner relies on the Declaration of Kousuke Kataoka dated December 27, 2011 (hereinafter "Kataoka Decl.").  Mr. Kataoka is employed by the Patent Owner and is a named inventor of the Kataoka reference, which is directed to printed circuit having a polyimide film. Kataoka Decl. ¶ 1-2; *see also* Kataoka, Abstract.  We find Mr. Kataoka qualified to testify as to the state of the art of using polyimide films for printed circuit applications at the time of the invention.

Patent Owner also relies on the Declaration of Dr. Frank W. Harris dated July 30, 2012 (hereinafter "Harris Decl.").  Dr. Harris testifies as to being "an expert on the polyimide compositions and methods relevant to the

---

[6] US 5,637,382, issued June 10, 1997, to Kosuke Kataoka et al. ("Kataoka").
[7] Kaneka Corporation, product data sheet for Apical®NP, undated ("Apical NP").  We note that Patent Owner does not contest that Apical NP represents prior art.
[8] H.D. Merchant, "Fatigue Life Statistics for 18µm Foil Based Flexible Circuits," Flexcon '98, Sunnyvale, CA, September 1998 ("Merchant").
[9] US 6,207,739 B1, issued March 27, 2001, to Kuzuhiro Ono et al. ("Ono '739").
[10] JP 2000-326442A, published November 28, 2000 ("JP '422").  The Examiner references US 6,586,081 B1, issued July 1, 2003, to Masaru Nishinaka et al. as an English language equivalent disclosure.

4

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

'704 patent." Harris Decl. ¶ 2. Dr. Harris's *curriculum vitae* demonstrates direct experience with structures and properties of polyimide films, but does not demonstrate any particular experience regarding using polyimide films for printed circuits. *See generally* Harris Decl., Exhibit A. Accordingly, we find Dr. Harris qualified to testify as to the state of the art of polyimide structures, properties, and processing.

The Requester relies on the Declaration of Dr. Edwin L. Thomas dated January 27, 2012 (hereinafter "First Thomas Decl.") and a second Declaration of Dr. Thomas dated August 29, 2012 (hereinafter "Second Thomas Decl."). Dr. Thomas testifies to experience in polymer-property-processing relationships. First Thomas Decl. ¶ 2 and Exhibit A (curriculum vitae).[11] We find Dr. Thomas qualified to testify as to the state of the art of polymer structures, properties and processing, and their relationship to each other generally. However, we note that Dr. Thomas has provided no indication of any particular experiences directed to polyimide films, particularly polyimide films for use in printed circuits.

### III.   CLAIMS

Claim 1 is an original claim and is representative of the subject matter on appeal (indentations added for clarity):

1.    A polyimide film for flexible printed circuit, having
    an average coefficient of thermal expansion of $1.0 \times 10^{-5}$ to $2.5 \times 10^{-5}$ cm/cm/°C. in temperature range of 100°C. to 200°C. and
    a stiffness value of 0.4 to 1.2 g/cm

---

[11] *See* Req. Res. Br., Evidence App'x 2, Exhibits Q.

5

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

> where the polyimide is obtained from diamine containing
> 4,4'-oxydianiline and paraphenylenediamine
>> in a mole ratio of 9/1 to 4/6.

PO App. Br. 35, Claim App'x.

Claim 4 is an amended dependent claim, which reads as follows (with underlining showing language added by amendment):

> 4.    A <u>polyimide film for a</u> flexible printed circuit comprising an adhesive layer and/or a conductor layer and an insulation material, wherein the polyimide film of claim 1 is used as said insulation material.

*Id.*

Claim 6 is a new independent claim, which reads as follows (with indentations for clarity):

> 6.    A polyimide film for flexible printed circuit, having
>> an average coefficient of thermal expansion of $1.0 \times 10^{-5}$ to $2.5 \times 10^{-5}$ cm/cm/°C. in temperature range of 100°C. to 200°C. and
>> a stiffness value of 0.4 to 1.2 g/cm, the stiffness value being measured using a loop stiffness tester,
>> where the polyimide is obtained from diamine containing 4,4'-oxydianiline and paraphenylenediamine
>>> in a mole ratio of 9/1 to 4/6.

*Id.* at 36.

6

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

## IV.  REJECTION OF CLAIMS 4 AND 5

## UNDER 35 U.S.C. § 112 and 35 U.S.C. § 314

Claims 4 and 5 stand rejected under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description and enablement requirements and under 35 U.S.C. § 112, second paragraph, as being indefinite.  RAN 6-10.

The issue with respect claims 4 and 5 turns on claim interpretation. The Requester takes the position that the amendment to claim 4 has two possible interpretations depending upon whether the term "comprising" refers back to the "polyimide film" or whether it refers back to the "printed circuit."  Req. Res. Br. 2.

If the word "comprising" modifies the "printed circuit," Requester argues that the claim is directed to a generic polyimide film that is suitable for use in a printed circuit having the recited properties.  *Id*.  Under such an interpretation, Requester contends that the claims would lack written descriptive support and not be enabled because the Specification of the '704 Patent does not describe or enable all polyimide films for use with a printed circuit, but rather only a film with the properties recited in claim 1.  *Id*. at 3. Further, Requester argues that a generic polyimide film is broader in scope that the original claims, which only recited a polyimide film having the properties of claim 1.  *Id*. at 4.

If the word "comprising" modifies the "polyimide film," Requester argues that the claim is directed to a polyimide film having an adhesive layer and/or conductive layer and an insulation material, as recited in the claims. *Id*. at 2.  Under such an interpretation, the claim would lack written

7

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

descriptive support because the Specification does not describe a multi-layered polyimide film only a multi-layered printed circuit. *Id.* at 3. Further, Requester argues that a multi-layered polyimide film is broader in scope that the original claims, which only recited a polyimide film having the properties of claim 1. *Id.* at 4.

The Examiner adopts the Requester's interpretations and determines that claim 4 is indefinite (for having two interpretations), lacks written descriptive support, and has an enlarged scope. RAN 7-10.

Patent Owner contends that claim 4, as amended, recites that the printed circuit has an adhesive layer and/or conductive layer and an insulating material. According to the Patent Owner, "the 'polyimide film' is further defined as being suitable for the insulation layer and as having the properties recited in claim 1." PO App. Br. 6.

We cannot agree with the Patent Owner's interpretation of the amendment to claim 4. Under Patent Owner's interpretation, the printed circuit includes an adhesive layer and/or conductive layer and a insulating material wherein the recited polyimide film is suitable for use as the insulation material of the printed circuit and has the properties in claim 1. Patent Owner's position is inconsistent with the shift in focus from the printed circuit to the polyimide film by the amended language of claim 4.

We adopt Requester's alternative interpretation as being the most reasonable interpretation of claim 4 as amended, i.e., that the film comprises the recited layers and insulation material which are separate from the printed circuit. This interpretation is also logical because otherwise the amendment to the claim would have been superfluous because the scope would have

8

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

been substantially unchanged. Accordingly, we agree with Requester that amended claim 4 is contrary to the disclosure in the '704 Patent, which only discusses the polyimide film as an insulating material and discusses the flexible printed circuit as including the adhesive and/or conductor layer and an insulating material (Col. 1, ll. 53-57). Thus, we agree with the Requester and the Examiner that the amendment to claim 4 renders the claim indefinite and, as interpreted on its face, lacking in written descriptive support, lacking enablement and expanded in scope for the reasons identified by Requester.

Claim 5, which is dependent upon claim 4, suffers from the same problems as claim 4.

Accordingly, we affirm the rejections of claims 4 and 5 under 35 U.S.C. § 112 and 35 U.S.C. § 314.


## V. ANTICIPATION AND OBVIOUSNESS BASED ON AKAHORI

Claims 1, 2, 4, and 6-11 stand rejected as anticipated under 35 U.S.C. § 102(b) or, alternatively, as obvious under 35 U.S.C. § 103(a) over Akahori. RAN 11-15.

The '704 Patent is the subject matter of a litigation in U.S. District Ct. for the Central District of California styled *Kaneka Corp* v. *SKC Kolon PI and SKC Inc.,* Case No. 2:11-cv-03397-JHN-RZX. Req. Res. Br. 1. The Central District of California case was stayed pending the resolution of a matter before the International Trade Commission (ITC) styled *In the Matter of Certain Polyimide Films, Products Containing Same, and Related Methods* - Inv. No. 337-TA-772. *See* Litigation Search Report entered into the record on August 15, 2011. On May 10, 2012, an Administrative Law

9

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

Judge at the ITC entered an Initial Determination finding that claim 1 of the '704 Patent was indefinite under 35 U.S.C. § 112, second paragraph,[12] and that Akahori did not anticipate or render obvious claim 1. *See* Initial Determination 54-61 and 141-144.[13]  On June 11, 2012, the ITC entered a Commission Opinion but did not review the Judge's conclusions regarding the '704 Patent. *See* Commission Opinion 3.  Upon resolution of the ITC action, the Central District of California has lifted the stay but has entered no final judgment that might affect our decision.

_____

[12] The judge in the ITC decision provided an extensive explanation as to why the phrase "average coefficient of thermal expansion" is indefinite. *See* Initial Determination 54-61.  The issue of indefiniteness of claim 1 is not before us for determination, as reexamination for originally issued claims is limited to prior art issues. 35 U.S.C. §§ 311(a), 301.  (2002), (1980).  Thus, despite the ITC determination, we render an opinion on the patentability of claim 1 based on the application of prior art under 35 U.S.C. §§ 102(b) and 103(a).

[13] The ITC does not apply the broadest reasonable interpretation standard to claim interpretation and operates under a heightened evidentiary standard. *See* Initial Determination 5-9 and 82.  We are not bound by, and it would not be appropriate for us to defer to, the ITC initial determination.  *See In re Baxter Intern., Inc.*, 678 F.3d 1357, 1364 (Fed. Cir. 2012) ("[T]he PTO in reexamination proceedings and the court system in patent infringement actions 'take different approaches in determining validity and on the same evidence could quite correctly come to different conclusions.'  In particular, a challenger that attacks the validity of patent claims in civil litigation has a statutory burden to prove invalidity by clear and convincing evidence.  Should the challenger fail to meet that burden, the court will not find the patent 'valid,' only that 'the patent challenger did not carry the 'burden of establishing invalidity in the particular case before the court.'  In contrast, in PTO reexaminations 'the standard of proof—a preponderance of the evidence—is substantially lower than in a civil case' and there is no presumption of validity in reexamination proceedings.") (internal citations omitted).

10

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

Claim 1 and 6 are directed to a polyimide film made from a particular mole ratio of 4-4'-oxydianiline and paraphenylenediamine having two properties (1) an average coefficient of thermal expansion of $1.0 \times 10^{-5}$ to $2.5 \times 10^{-5}$ cm/cm/°C. in temperature range of 100°C. to 200°C. and (2) a stiffness value of 0.4 to 1.2 g/cm. Claim 6 particularly requires the property of a stiffness value of 0.4 to 1.2 g/cm as measured using a loop stiffness tester.

The Requester's proposed rejections, adopted by the Examiner, including the rejection based on Akahori, are based on a statement in the '704 Patent that "[t]he stiffness value is determined by kx(film thickness)$^3$x(elastic modulus of the film) (k is a proportional constant)." *See* RAN 12, Req. Res. Br. 5; '704 Patent, col. 2, ll. 7-8. From this statement, the Respondent used the stiffness loop testing data, the elastic modulus and the "average thickness," $X_{ave}$ (μm), reported in the examples of the '704 Patent and calculates a "k" value using linear regression of $1.85 \times 10^{-7}$ without the comparative examples and a "k" value of $1.75 \times 10^{-7}$ including the comparative examples. RAN 12 and 63; Req. Res. Br., Evidence App'x, App'x 1 and Updated App'x 1. Using the linear regressed "k" values, the Requester calculated stiffness values based on the thickness and elastic moduli disclosed in the prior art. *See e.g.*, RAN 63 and Req. Res. Br., Evidence App'x, App'x 2 and Revised App'x 2.

Patent Owner argues that the stiffness value is a property which can only be measured experimentally by methods such as the loop stiffness tester described in the '704 Patent and that the Examiner erred in creating a "k"

11

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

value from the data of the '704 Patent to determine a stiffness value for the polyimide films of the prior art.  PO App. Br. 8.

Even if the stiffness value of a film is a property of a polyimide film that is experimentally measured by a loop stiffness tester, every polyimide film, provided that it was placed on a stiffness loop tester as described for the films in the '704 Patent, inherently would have a measured stiffness value property.  However, since the Patent and Trademark Office does not have before it the means to test a polyimide film in the prior art to determine if a polyimide film having the claimed stiffness value was, in fact, already present in polyimide films described in the prior art, the Office routinely relies on alternative evidence in order to determine whether an inherent property is present in the prior art.

In general, a limitation is inherent if it is the "natural result flowing from" the explicit disclosure of the prior art.  *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003).  Where the Examiner has reason to believe that a claimed property may, in fact, be an inherent characteristic of the prior art product, an Examiner possesses the authority to require applicant to prove that the subject matter shown to be in the prior art does not in fact possess the property.  *In re Best*, 562 F.2d 1252, 1254-55 (CCPA 1977).  However, before applicant can be put to this burdensome task, the Examiner must provide enough evidence or scientific reasoning to establish that the Examiner's belief that the property is inherent is a reasonable belief.  *Ex parte Levy*, 17 USPQ2d 1461, 1464-65 (BPAI 1990); *Ex parte Skinner*, 2 USPQ2d 1788, 1789 (BPAI 1986).  We determine that the Requester's calculations based on the data from the '704 Patent is

12

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

sufficient factual evidence and scientific reasoning to support a finding
regarding an unstated property of the prior art polyimide films.

Though the inventors of the '704 Patent may have been the first to
recognize that a polyimide film having a loop stiffness value of between 0.4
and 1.2 g/cm is particularly desirable for use in a flexible printed circuit, the
evidence supports the Examiner's determination that polyimide films that
inherently have such a loop stiffness value were known in the art for use in
printed circuits prior to the inventor's recognition. The inventors chose to
claim a polyimide film having a particular property that was inherently
present but not recognized in the prior art. The new realization alone does
not render what is taught in the prior art patentable. *In re Cruciferous
Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002) ("[i]nherency is not
necessarily coterminous with knowledge of those of ordinary skill in the art.
Artisans of ordinary skill may not recognize the inherent characteristics or
functioning of the prior art."); *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d
1342, 1347 (Fed. Cir. 1999) ("[T]he discovery of a previously unappreciated
property of a prior art composition, or of a scientific explanation for the
prior art's function, does not render the old composition patentably new to
the discoverer.").

We agree with the Requester that it was reasonable for the Examiner
to rely on the data of the '704 Patent in calculating a "k" value and using
that "k" value to produce additional evidence that the polyimide films in the
prior art relied upon inherently have a stiffness value falling within the
claimed range. Requester presents sufficient evidence that the Requester's
linear regression is an appropriate way to determine a proportionality

13

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

constant from a scattering of data. *See e.g.* Tomioka, "Bend stiffness of copper and copper alloy foils," J. Mat. Proc. Tech., Vol. 146, pp. 232, Figure 10 (2004).[14] Indeed, even Patent Owner's expert, Dr. Harris states that "I agree with Dr. Thomas' general approach" to determine a regressive slope of a line of the plotted data to determine a proportionality constant. Harris Decl. ¶¶ 15-17.

Patent Owner argues that, despite the express statement in the '704 Patent that "k is a proportional constant," "k" is not a true constant. PO App. Br. 9; PO Reb. Br. 3. The evidence does not support Patent Owner's position. The '704 Patent states that "[t]he stiffness value is determined by kx(film thickness)$^3$x (elastic modulus of the film) (k is a proportional constant)." '704 Patent, col. 2, ll. 7-8. The '704 Patent expressly defines "k" as a "proportional constant." Further, Requester produced evidence that the formula presented in the '704 Patent was a general formula known in the art not only for polymer film stiffness but also for determining stiffness for other materials as well. *See* First Thomas Decl. ¶¶ 7-8 and attached Exhibits B-D.[15] Accordingly, we credit the express statement in the '704 Patent that "k" is a constant, which is supported by a preponderance of the evidence.

Patent Owner, relying on the statements of Dr. Harris, argues that materials and process conditions affect the elastic modulus, and as a result would affect the calculated "k" value. *See* PO App. Br. 13 and 16-19 (citing Harris Decl. ¶¶ 7-8, 17, and 20-22).

---

[14] The Tomioka article was attached as Exhibit D of the Thomas Declaration. *See* Req. Res. Br., Evidence App'x 2, Exhibit T.
[15] *See* Req. Res. Br., Evidence App'x 2, Exhibits R-T.

14

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

Even accepting Dr. Harris's testimony, the formula provided in the '704 Patent defines the elastic modulus to be a different contributing variable in determining stiffness apart from the "k" value, which is defined as a "proportional constant." Patent Owner has not explained why the differences in elastic modulus would not adequately account for the differences in various polyimide products and processing conditions in the formula provided in the '704 Patent.

Patent Owner also argues that "the k value is not unvarying" because it "depends on starting materials and preparation process conditions," the "k" value only would be reflective of the particular type of stiffness loop tester and the precise procedures used to determine a stiffness value described in the '704 Patent, and, thus, the "k" value would not be indicative of stiffness testing using different procedures or devices. PO App. Br. 9 and 14-15; PO Reb. Br. 3.

The evidence shows that a particular "k" value may change depending upon the equipment and stiffness loop tester procedure. For example, Dr. Thomas testifies that

> [T]he proportionality constant "k" is a constant for a particular test protocol. Thus, the value for "k" will depend only on the details of the test, such as the film geometry, sample size, etc. A person of ordinary skill in the art would understand that in order to conduct a test to calculate the stiffness among a variety of thin films, one would have to take efforts to ensure that certain testing variables remain constant. For example, when conducting a loop stiffness test for a thin film, these variables include the sample size of the film, i. e., the width and the length, and the operating conditions of the test, such as the size of the loop and squash distance.

15

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

First Thomas Decl. ¶ 10.  Patent Owner's expert agrees with the statement.
Harris Decl. ¶ 12.

Thus, because the "k" value was calculated using loop stiffness tester data collected using the precise protocols stated in the '704 Patent (*see* '704 Patent, col. 6, ll. 1-6), the calculations performed by the Requester reflect what the stiffness value of the polyimide film of Akahori would be if performed to the exact same stiffness loop tester procedures stated therein. Accordingly, without having available stiffness loop testing data using the precise specifications described in the '704 Patent, using the calculated "k" value provides the best evidence of a film's stiffness tested under such conditions.  Accordingly, the Requester's calculations are also sufficient evidence that the polyimide films suggested by Akahori inherently have the stiffness loop value recited in claim 6 as measured on a stiffness loop tester using the protocols of the '704 Patent.

Patent Owner also argues that the elastic modulus and thickness are values that are experimental in nature and thus the data used to derive "k" and the data from the prior art cannot be compared, since the prior art is silent as to how the elastic modulus is determined. PO App. Br. 15-16.  For example, Dr. Harris testifies that "one cannot compare an elastic modulus given in another patent to that given in the '704 when there is no way to determine if they were obtained using the same equipment, variables and procedures."  Harris Decl. ¶ 13.

However, Patent Owner has presented no persuasive evidence to suggest that the recitation of elastic modulus values in the '704 Patent and in the prior art are not in fact comparable, even if determined experimentally.

16

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

To the contrary, Requester has presented evidence that measurements of elastic modulus are standard in the prior art. Second Thomas Decl. ¶ 4 and Exhibit A (citing ASTM-D882[16]).

The '704 Patent further defines the "thickness" as being "the average of ten points measured in equal intervals in the longitudinal direction from the center area by a constant thickness meter." *Id.*, col. 2, ll. 16-23. The '704 patent uses the value "$X_{ave}$" as being this experimentally determined average thickness. *Id.*, col. 2, l. 32. In other words, the '704 Patent recognizes the thickness variations in a particular sample of polyimide film. The '704 Patent further provides $X_{ave}$ data, elastic modulus and stiffness loop testing data for twelve example polyimide films and two comparative example polyimide films, having different compositions. *Id.* col. 6, l. 35 to col. 42; Table 1; PO App. Br. 16.

Patent Owner contends that Akahori does not teach average thicknesses as taught by the '704 Patent. PO App. Br. 11 and 19-22; *see generally* Akahori. Rather Akahori teaches that the polyimide films of the examples have a thickness of 15 to 25 µm. *Id.*, col. 8, ll. 26-28 and col. 9, ll. 46-48. The Examiner found that for an average thickness of 20 µm and an elastic modulus of 380 kg/mm$^2$ as taught by Akahori's Example 7, that the polyimide film would inherently have a stiffness value of either 0.56 g/cm or 0.53 g/cm, depending up whether the comparative examples were included in calculating the "k" value, respectively.[17] Further, the Examiner concluded

---

[16] *See* Req. Res. Br., Evidence App'x 2, Exhibit W.

[17] The Requester used a small sample of data in calculating the "k" value, and we appreciate that with additional data points, the actual "k" value may vary somewhat from the "k" value determined with the limited data

17

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

that it would have been obvious to one of ordinary skill in the art at the time of the invention to have prepared the polyimide film of Akahori's Example 7 such that it has an average thickness of 20 µm and an elastic modulus of 380 kg/mm$^2$, as it is clearly within the scope of Akahori's disclosure, and that such a film would inherently have a stiffness value within the range claimed. RAN 14.

Because Akahori does not disclose an average thickness, based on the measurement of 10 points on a film sheet, exactly in the manner described in the '704 Patent, we cannot find that Akahori teaches an average thickness, or $X_{ave}$, as recited in the '704 Patent. Accordingly, Akahori does not support a finding that Akahori describes with sufficient specificity a polyimide film having an average thickness of 20 µm that would inherently have a stiffness value within the range claimed.

However, based on the teaching in Akahori of an actual thickness ranging from 15 to 25 µm, we find that sufficient evidence that a polyimide film prepared using the process taught by Example 7 of Akahori having an average thickness measured as directed by the '704 Patent of approximately 20 µm would have been obvious to one of ordinary skill in the art. *See Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1368 (Fed. Cir. 2007) (discovery

---

available in the '704 Patent. However, the Requester's calculations, which use a "k" value both with and without the data from the comparative examples, show that minor difference in the "k" value does not substantially change the stiffness value for a polyimide film having an average thickness of 20 µm and an elastic modulus of 380 kg/mm$^2$. Thus, even if the "k" value would be somewhat different with the inclusion of additional data points, we find sufficient evidence that the actual stiffness value for a polyimide film having an average thickness of 20 µm and an elastic modulus of 380 kg/mm$^2$ would nonetheless still fall within the range recited in the claims.

18

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

of an optimum value of a variable in a known process is usually obvious); *In re Aller*, 220 F.2d 454, 456 (CCPA 1955) ("[I]t is not inventive to discover the optimum or workable ranges by routine experimentation.").

Further, the calculations provided by Requester are sufficient evidence and reasoning to conclude that a film with such an average thickness would have a stiffness value falling within the scope of the claimed range. *See In re Skoner*, 517 F.2d 947, 950-51 (CCPA 1975) ("Appellants have chosen to describe their invention in terms of certain physical characteristics.... Merely choosing to describe their invention in this manner does not render patentable their method which is clearly obvious in view of [the reference].") (internal citation omitted).

The polyimide films disclosed or suggested by the prior art have a stiffness value as a property of the film. That stiffness value is a measured value using a specific protocol described in the '704 Patent. The '704 Patent and Patent Owner's experts identify that the recited stiffness value is affected by the elastic modulus, the thickness of the film and the particular testing protocol. Because the prior art suggests a film having an average thickness of approximately 20 μm and having an elastic modulus of 380 kg/mm$^2$, the calculations of Requester, for the reasons discussed above, provide sufficient evidence and reasoning to support a finding that the polyimide films suggested by the prior art inherently have a stiffness value within the claimed range and to shift the burden to Patent Owner to show that the actual measured stiffness value of the film suggested by the prior art does not have the stiffness value claimed. *In re Spada*, 911 F.2d 705, 708 (Fed Cir. 1990) ("[W]hen the PTO shows sound basis for believing that the

19

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

products of the applicant and the prior art are the same, the applicant has the burden of showing that they are not.").

Patent Owner further contends that Akahori fails to disclose a polyimide film having an average coefficient of thermal expansion of $1.0 \times 10^{-5}$ to $2.5 \times 10^{-5}$ cm/cm/°C. in a temperature range of 100°C. to 200°C. PO App. Br. 21-22. Dr. Harris testifies that if the coefficients of thermal expansion had been determined over the range of 100°C. to 200°C, instead of only at 200°C, "their values would have been lower." Harris Decl. ¶ 26.[18]

Akahori generally teaches copolyimide films having a linear thermal expansion coefficient of $2.5 \times 10^{-5}$ or less at 50 to 300°C. Akahori, col. 4, ll. 18-23 and col. 7, ll. 52-54. Additionally, Example 7 of Akahori also teaches a polyimide film having a coefficient of thermal expansion at 200°C of $1.87 \times 10^{-5}$ cm/cm/°C and an elastic modulus of 380 kg/mm$^2$. *Id.*, col. 13-14, Table 1.

While the polyimide of Example 7 may have an average coefficient of thermal expansion over the range of 100 °C to 200 °C that is lower than when measured only at 200 °C, Patent Owner has provided no meaningful evidence to support a conclusion that the lower average coefficient of thermal expansion would be significantly lower than the disclosed $1.87 \times 10^{-5}$ cm/cm/°C that it would fall outside of the claimed range.

_____

[18] In the ITC Action, the Judge's determination that Akahori did not anticipate or render obvious claim 1 was based in part on testimony by Dr. Harris that "The CTE of the polymer in example 7 would also fall outside the claimed range if it were determined between 100°Cand 200°C." *See* Initial Determination 143. However, Dr. Harris provided no such testimony in this proceeding, and we do not consider evidence that is not of record in our determination.

20

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

Accordingly, we reverse the rejection of claims 1, 2, 5, and 6-11 under 35 U.S.C. § 102, as anticipated by Akahori, but affirm the rejections of claims 1, 2, 5, and 6-11 under 35 U.S.C. § 103(a) as obvious over Akahori.

As discussed above, claims 3, 5, and 11 stand or fall with claims 1 and 6 from which they depend. Accordingly, we further affirm the rejections of claims 3, 5, and 11 under 35 U.S.C. § 103(a) as obvious over Akahori in combination with additional prior art of record as identified by the Examiner.

## VI.  REMAINING REJECTIONS

Because our decision is dispositive regarding the unpatentability of all the claims based on Akahori alone or in combination with additional art, we need not reach the merits of the cumulative obviousness rejections based on other references.[19] *See In re Gleave*, 560 F.3d 1331, 1338 (Fed. Cir. 2009) (holding that obviousness rejections need not be reached upon affirming a rejection of all claims as anticipated).

## VII.  SUMMARY

In sum, we:

affirm the rejection of claims 4 and 5 under 35 U.S.C. § 112, second paragraph for being indefinite;

---

[19] We note in passing, that Patent Owner's arguments directed to the remaining rejections are similarly directed to the Requester's calculated "k" value being used to provide evidence of the stiffness values of obvious polyimide films where the prior art reflects reported thickness and elastic modulus.

21

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

affirm the rejection of claims 4 and 5 under 35 U.S.C. § 112, first paragraph 1 for failing to comply with the written description and enablement requirements;

affirm the rejection of claims 4 and 5 under 35 U.S.C. § 314(a) for enlarging the scope of the originally patented claims;

reverse the rejection of claims 1-2, 4 and 6-11 under 35 U.S.C. § 102(b) as anticipated by Akahori;

affirm the rejection of claims 1-2, 4 and 6-11 under 35 U.S.C. § 103(a) as obvious over Akahori;

affirm the rejection of claims 3 and 5 under 35 U.S.C. §103 (a) as obvious over Akahori in view of Kataoka, as evidenced by Apical NP;

affirm the rejection of claims 3 and 5 under 35 U.S.C. §103 (a) as obvious over Akahori in view of Merchant;

affirm the rejection of claim 11 under 35 U.S.C. §103 (a) as obvious over Akahori in view of either Ono '739 or JP '442; and

decline to reach the remaining rejections on appeal.


TIME PERIOD FOR RESPONSE

In accordance with 37 C.F.R. § 41.79(a)(1), the "[p]arties to the appeal may file a request for rehearing of the decision within one month of the date of: . . . [t]he original decision of the Board under § 41.77(a)." A request for rehearing must be in compliance with 37 C.F.R. § 41.79(b). Comments in opposition to the request and additional requests for rehearing must be in accordance with 37 C.F.R. § 41.79(c) & (d), respectively. Under 37 C.F.R. § 41.79(e), the times for requesting rehearing under paragraph (a)

22

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

of this section, for requesting further rehearing under paragraph (d) of this section, and for submitting comments under paragraph (c) of this section may not be extended.

An appeal to the United States Court of Appeals for the Federal Circuit under 35 U.S.C. §§ 141-144 and 315 and 37 C.F.R. § 1.983 for an *inter partes* reexamination proceeding "commenced" on or after November 2, 2002 may not be taken "until all parties' rights to request rehearing have been exhausted, at which time the decision of the Board is final and appealable by any party to the appeal to the Board." 37 C.F.R. § 41.81. *See also* MPEP § 2682 (8th ed., Rev. 7, July 2008).

<u>AFFIRMED</u>

23

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

PATENT OWNER:

Westerman, Hattori, Daniels & Adrian, LLP
1250 Connecticut Avenue, NW
Suite 700
Washington, D.C. 20036

THIRD-PARTY REQUESTER:

Finnegan, Henderson, Farabow, Garrett & Dunner LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

cu

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,707 | 08/15/2011 | 7018704 | 111039RX | 8559 |

38834        7590        09/23/2014
WESTERMAN, HATTORI, DANIELS & ADRIAN, LLP
1250 CONNECTICUT AVENUE, NW
SUITE 700
WASHINGTON, DC 20036

| EXAMINER |
|---|
| DIAMOND, ALAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3991 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/23/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

SKC KOLON PI, INC.
Requester

v.

KANEKA CORPORATION
Patent Owner and Appellant

_____

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2
Technology Center 3900

_____

Before CHUNG K. PAK,[1] RICHARD M. LEBOVITZ, and
JEFFREY B. ROBERTSON, *Administrative Patent Judges*..

ROBERTSON, *Administrative Patent Judge*.

DECISION ON REHEARING

In the Decision on Appeal dated November 11, 2013 ("Decision"), the
panel affirmed the Examiner's rejections of claims 1-11 of U.S. Patent
7,018,704 B2 (hereinafter, "the '704 Patent").

_____

[1] Administrative Patent Judge Rae Lynn P. Guest was on the original panel
which decided this case, but is unavailable at this time. Judge Pak has been
added to the merits panel. *In re Bose Corp*., 772 F.2d 866, 869 (Fed. Cir.
1985).

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

Patent Owner requests rehearing of this decision under 37 C.F.R.

§ 41.79.  Request for Rehearing ("Req. R'hg") dated December 12, 2013.

Requester submitted comments on Patent Owner's Request for Rehearing on

January 13, 2014 (hereinafter "Requester Comments").

Initially, Patent Owner contends the Board misapprehended or

overlooked that:

The Examiner's calculation of a "k" value used to establish that

Akahori's[2] polyimide film inherently possessed a stiffness value in the

claimed range failed to follow Federal Circuit precedent (Req. R'hg 1-5);

The failure of Akahori's films to inherently possess a stiffness value

within the claimed range negates a conclusion that the claims would have

been obvious (Req. R'hg 5-6); and

Substantial evidence does not support the Examiner's approach that

the (k) values calculated from the data of the '704 Patent would reflect the

stiffness value of the polyimide film of Akahori.  (Req. R'hg 6-9.)

I. Calculation of "k" value

Patent Owner alleges that the Examiner optimized the calculated "k"

value in at least two ways that were either overlooked or misapprehended by

the Board.  (Req. R'hg 2.)  First, Patent Owner contends that the Examiner

failed to include all available "k" values when calculating the average "k"

value from the Specification of the '704 Patent.  (*Id.* 2-3.)  Second, Patent

Owner contends that the Examiner used a sloped value for "k", and as a

---

[2] US Patent 5,081,229, issued January 14, 1992, to Kiyokazu Akahori et al.
("Akahori").

2

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

result, the Examiner did not consider what the calculated stiffness values would be for the prior art polyimide films at the high and low ends of the range of "k" values identified by the Examiner in the RAN, which impacted whether the Akahori polyimide films inherently possess a stiffness value within the claimed range. (Req. R'hg 3.)

Requester contends that the Board could not have misapprehended or overlooked Patent Owner's arguments, because the arguments were not made previously to the Board. (Requester Comments 5.) Requester argues that contrary to Patent Owner's arguments, the Board did not rely on the Examiner's average "k" value, but rather the linear regression analysis of the thickness, elastic modulus, and stiffness data from the '704 Patent to determine a single "k" value, which relied on all the available data from Table 1 in the '704 Patent, such that there was no optimization of "k". (Requester Comments 5.) Further, Requester points out that there is no substantive difference between the average "k" value, and the single "k" value determined from the linear regression analysis, because both yielded stiffness values within the claimed range. (Requester Comments 6.)

After carefully consideration of Patent Owner's contentions, we are not persuaded that the panel misapprehended or overlooked the concerns raised by Patent Owner surrounding the "k" value applied by the Examiner. The panel acknowledged expressly in the Decision that the "k" value would vary somewhat depending on whether the data from the comparative examples was included in determining "k," but found sufficient evidence that Akahori's materials would still possess stiffness values within the claimed range. (Decision 17-18, N.17; *see also* RAN 5-6, 63.) Accordingly,

3

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

the panel did not misapprehend or overlook the "k" values, and how the "k"

values were determined in the Decision.


II. Obviousness of claims in view of Akahori's Polyimide Films

Patent Owner contends that the Board misapprehended or overlooked

that the finding in the Decision that Akahori fails to inherently possess a

stiffness value within the claimed range negates a conclusion that the

Akahori film would render the claimed films obvious.  (Req. R'hg 5.)

Specifically, Patent Owner argues that the Decision is internally inconsistent

because the Board:

> proceeded to find that the Akahori film inherently possesses a
> stiffness value within the claimed range.  The Board incorrectly
> reached this inconsistent conclusion by selecting one possible
> set of circumstances under Akahori (PI film thickness of 20
> µm) and then using that 20 µm thickness value in the stiffness
> equation to find that the Akahori film inherently possesses a
> stiffness value within the claimed range.

(Req. R'hg 5.)

Requester contends that the reason the Board reversed the anticipation

rejection was because Akahori did not report a thickness using the method in

the '704 Patent.  (Requester Comments 9.)  Requester argues that the Board

did not declare that the film thickness was inherently 20µm as argued by

Patent Owner, but a film having that thickness would have been obvious in

view of Akahori's disclosure of films with a range of 15 to 25 µm.

(Requester Comments 10.)

In the Decision, the panel stated:

> Because the prior art suggests a film having an average
> thickness of approximately 20 µm and having an elastic

4

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

> modulus of 380 kg/mm², the calculations of Requester, for the
> reasons discussed above, provide sufficient evidence and
> reasoning to support a finding that the polyimide films
> suggested by the prior art inherently have a stiffness value
> within the claimed range and to shift the burden to Patent
> Owner to show that the actual measured stiffness value of the
> film suggested by the prior art does not have the stiffness value
> claimed.

(Decision 19.)

Thus, contrary to Patent Owner's contention, the panel did not

misapprehend or overlook an internal inconsistency in the Decision. As

pointed out by Requester, the finding that Akahori did not inherently

disclose the claimed stiffness value in the Decision was based on the

position that the Examiner erred in finding that Akahori disclosed films

having a thickness of 20μm. (Decision 18.) Thus, the deficiency the panel

identified in the anticipation rejection was the disclosed thickness of the

films in Akahori, and not that films having a thickness of 20μm would not

inherently possess a stiffness value within the claimed range. The panel

determined in the Decision that films having a thickness of 20μm were

suggested by Akahori, and as a result, a stiffness value falling within the

claimed range would have naturally or necessarily followed from the

suggestion by Akahori. *In re Kubin*, 561 F.3d 1351, 1357 (Fed. Cir. 2009)

("Even if no prior art of record explicitly discusses the [limitation],

[applicants'] application itself instruct that [the limitation] is not an

additional requirement imposed by the claims on the [claimed invention],

but rather a property necessarily present in [the claimed invention]"); *Ex

parte Obiaya*, 227 USPQ 58, 60 (BPAI 1985)("The fact that appellant has

recognized another…[ advantageous property] which would flow naturally

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

from following the suggestion of the prior art cannot be the basis for patentability when the difference would otherwise have been obvious.") Accordingly, Patent Owner appears to have misunderstood the premise behind the rejection.  Thus, we are unpersuaded by Patent Owner's arguments.

III. Substantial evidence supporting the calculation of "k" value

Patent Owner contends further that the Board misapprehended or overlooked that substantial evidence does not support the Board's conclusion that the "k" value calculated from the data of the '704 Patent would reflect the stiffness values of the films disclosed in Akahori.  (Req. R'hg 7.)  Patent Owner cites the Harris Declaration and the Kataoka Declaration as evidence that the Decision overlooked that the manner of producing the films and the composition of the polyimide affect the film properties and relationships.  (Req. R'hg 7-8.)  Patent Owner argues also that the Thomas Declaration stated that film geometry plays a role in determining "k" values, similar to the Harris and Kataoka Declarations.  (Req. R'hg 8.)

Requester contends that the Board addressed the argument that the composition and manner of manufacture would affect the film properties and relationships.  (Requester Comments 10, citing Decision 14-16.)

We are unpersuaded that the panel misapprehended or overlooked the evidence relating to effect of the process conditions and composition on the "k" value, for essentially the reasons discussed in the Decision on pages 14-16.  In particular, after discussing the Harris Declaration and citing to the

6

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

Thomas Declaration, which discusses the effect of film geometry, the
Decision stated:

> Thus, because the "k" value was calculated using loop
> stiffness tester data collected using the precise protocols stated
> in the '704 Patent (*see* '704 Patent, col. 6, ll. 1-6), the
> calculations performed by the Requester reflect what the
> stiffness value of the polyimide film of Akahori would be if
> performed to the exact same stiffness loop tester procedures
> stated therein. Accordingly, without having available stiffness
> loop testing data using the precise specifications described in
> the '704 Patent, using the calculated "k" value provides the best
> evidence of a film's stiffness tested under such conditions.
> Accordingly, the Requester's calculations are also sufficient
> evidence that the polyimide films suggested by Akahori
> inherently have the stiffness loop value recited in claim 6 as
> measured on a stiffness loop tester using the protocols of the
> '704 Patent.
> (Decision 16.)

Although the Decision does not expressly discuss the Kataoka
Declaration, the concepts described in it, and discussed by Patent Owner in
the Request for Rehearing, related to the effect of the composition and
process conditions used to produce the polyimide film on the resulting
polyimide film, as well as the effect of the film geometry, were considered
in conjunction with the other Declaration evidence expressly discussed in
the Decision. This was also addressed by the Examiner in the RAN. (RAN
61-62.) Accordingly, the panel did not misapprehend or overlook the points
relating to the evidence that are raised by the Patent Owner.

In view of the foregoing, we decline Patent Owner's invitation to
revisit the remaining rejections. (*See* Req. R'hg 9.)

7

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

Therefore, we decline to make any changes in the Decision mailed November 12, 2013.  Accordingly, the Request for Rehearing is denied.

<u>DENIED</u>

8

Appeal 2013-007390
Reexamination Control 95/001,707
Patent 7,018,704 B2

PATENT OWNER:

Westerman, Hattori, Daniels & Adrian, LLP
1250 Connecticut Avenue, NW
Suite 700
Washington, D.C. 20036


THIRD-PARTY REQUESTER:

Finnegan, Henderson, Farabow, Garrett, & Dunner LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413


cu


US007018704B2

(12) **United States Patent**
Kaneshiro et al.

(10) **Patent No.:** **US 7,018,704 B2**
(45) **Date of Patent:** **Mar. 28, 2006**

(54) **POLYIMIDE FILM FOR FLEXIBLE PRINTED BOARD AND FLEXIBLE PRINTED BOARD USING THE SAME**

(75) Inventors: **Hisayasu Kaneshiro**, Uji (JP); **Kiyokazu Akahori**, Otsu (JP)

(73) Assignee: **Kaneka Corporation**, Osaka (JP)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/471,047**

(22) PCT Filed: **Sep. 27, 2002**

(86) PCT No.: **PCT/JP02/10117**

§ 371 (c)(1),
(2), (4) Date: **Sep. 4, 2003**

(87) PCT Pub. No.: **WO03/030598**

PCT Pub. Date: **Apr. 10, 2003**

(65) **Prior Publication Data**

US 2004/0081808 A1    Apr. 29, 2004

(30) **Foreign Application Priority Data**

Sep. 28, 2001    (JP) ............................. 2001-303219

(51) **Int. Cl.**
**B32B 15/00** (2006.01)
**B32B 7/02** (2006.01)
**C08G 63/00** (2006.01)

(52) **U.S. Cl.** ........................ **428/209**; 428/214; 528/183

(58) **Field of Classification Search** ..................... None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,432,001 A * | 7/1995 | Serafini et al. | ............. 428/395 |
| 2002/0010311 A1* | 1/2002 | Edman et al. | ............. 528/310 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0786928 A1 | 7/1997 |
| JP | 6-6360 B2 | 1/1994 |
| JP | 11-227099 A | 8/1999 |
| JP | 11-298102 A | 10/1999 |
| JP | 2000-299359 A | 10/2000 |

OTHER PUBLICATIONS

International Search Report from Corresponding PCT Application No. PCT/JP02/10117, dated Dec. 24, 2002, 1 page.

* cited by examiner

*Primary Examiner*—Amir Zarabian
*Assistant Examiner*—Kiesha Rose
(74) *Attorney, Agent, or Firm*—Brinks Hofer Gilson & Lione

(57) **ABSTRACT**

The present invention provides a flexible printed circuit which is free from curl, torsion and warpage due to temperature change and excellent flexural endurance. By using polyimide film having an average coefficient of thermal expansion of $1.0 \times 10^{-5}$ to $2.5 \times 10^{-5}$ cm/cm/° C. in a temperature range of 100° C. to 200° C. and a stiffness value of 0.4 to 1.2 g/cm as the base film for the flexible printed circuit, a flexible printed circuit having excellent thermal dimensional stability and flexural endurance can be prepared.

**5 Claims, No Drawings**

US 7,018,704 B2

**1**

## POLYIMIDE FILM FOR FLEXIBLE PRINTED BOARD AND FLEXIBLE PRINTED BOARD USING THE SAME

### RELATED APPLICATIONS

This application is a nationalization of PCT Application No. PCT/JP02/10117 filed Sep. 27, 2002. This application claims priority from Japanese Patent Application No. 2001-303219 filed on Sep. 28, 2001.

1. Technical Field

The present invention relates to a flexible printed circuit which is free from curl, torsion and warpage due to temperature change and also has excellent flexural endurance, and a base film thereof.

2. Background Art

Previously a flexible printed circuit (hereinafter referred to as FPC) has mainly been used in narrow spaces within a camera in a folded form, utilizing its flexibility. Recently, however, flexible printed circuits have come to be used in drive units of floppy disc drives, hard disc drives, copy machines and printers and therefore enhancement of the flexural endurance of flexible printed circuits is required. To enhance the flexibility of the base film, a film made from polyimide having a chemical structure providing high bending property can be used. However, polyimide having high bending property generally has a high coefficient of thermal expansion (CTE), so a flexible printed circuit using the polyimide film as an insulating material has the disadvantage that warpage and curl easily occur. By contrast, when polyimide having a low coefficient of thermal expansion is selected, problems occur such as the film loses flexibility and becomes fragile and the bending property of the obtained FPC decreases.

In light of the above situation, the present invention aims to provide a flexible printed circuit which has excellent thermal dimensional stability and flexural endurance regardless of chemical structure and is free from curl, torsion and warpage due to temperature change without losing ease in handling the base film, and a base film thereof.

### DISCLOSURE OF INVENTION

The present invention relates to a polyimide film for a flexible printed circuit, wherein the average coefficient of thermal expansion in the temperature range of 100° C. to 200° C. is $1.0\times10^{-5}$ to $2.5\times10^{-5}$ cm/cm/° C. and the stiffness value is 0.4 to 1.2 g/cm.

The present invention also relates to the above-mentioned polyimide film for a flexible printed circuit comprising polyimide obtained from diamine containing 4,4'-oxydianiline and paraphenylenediamine in a mole ratio of 9/1 to 4/6.

The present invention also relates to a flexible printed circuit comprising an adhesive layer and/or a conductor layer and an insulation material, characterized in that the insulation material is the above-mentioned polyimide film.

Furthermore, the present invention relates to a flexible printed circuit, wherein the number of flexes is at least 10 million times

### BEST MODE FOR CARRYING OUT THE INVENTION

The polyimide film for a flexible printed circuit and a flexible printed circuit using the same of the present invention are described below based on one example of the embodiments.

**2**

It is important for the polyimide film of the present invention to adjust the stiffness value to 0.4 to 1.2. The inventors of the present invention found that the flexural endurance of a film is related to the stiffness value and when the value is 0.4 to 1.2, the film has excellent flexural endurance.

The stiffness value is determined by k×(film thickness)³× (elastic modulus of the film) (k is a proportional constant). These values can be determined so that the stiffness value becomes 0.4 to 1.2, but the film thickness is preferably 17 to 25 μm, more preferably 17 to 23 μm and most preferably 18 to 22 μm. In the case that the film thickness is above the range, the flexural endurance is likely to decrease. In the case that the thickness is below the range, ease in handling the film is likely to decrease.

In the present invention, the film thickness is defined as follows.

In the cases of both a long sheet film and a sheet type film, the film is randomly cut out into the size of a sample for a flexural endurance experiment (180×25 mm) defined by JPCA-FC01 and the thickness is the average of ten points measured in equal intervals in the longitudinal direction from the central area by a contact thickness meter.

When the film thickness fulfills the following equation (1), preferable results regarding flexural endurance can be obtained.

$$X_{max}-X_{min}=aX_{ave} \tag{1}$$

$X_{max}$: the maximum value of the 10 points
$X_{min}$: the minimum value of the 10 points
$X_{ave}$: the average value of the 10 points

In the equation, 'a' is at most 0.3, preferably at most 0.2 and further preferably at most 0.1.

Furthermore, the elastic modulus of the film is preferably 350 to 600 kg/mm², more preferably 380 to 550 kg/mm², further preferably 400 to 500 kg/mm², most preferably 400 to 450 kg/mm². In the case that the elastic modulus is below the range, warpage tends to develop in the FPC. In the case that the elastic modulus is above the range, the average coefficient of thermal expansion in the temperature range of 100° to 200° C. can be out of the preferable range.

The polyimide film for a flexible printed circuit of the present invention, for example, can be prepared by flow casting an organic solvent solution of polyamide acid, which is a precursor of polyimide, onto a supporting body such as an endless belt or stainless drum, then drying and imidizing.

As a process of preparing the polyamide acid used in the present invention, known processes can be used. Polyamide acid is usually produced by a process comprising dissolving substantially equimolar amounts of at least one kind of aromatic tetracarboxylic dianhydride and at least one kind of diamine in an organic solvent, and then stirring the obtained polyamide acid organic solvent solution under a controlled temperature until polymerization of the above-mentioned acid dianhydride and the diamine is completed. This polyamide acid solution is obtained usually in a concentration of 5 to 35% by weight, preferably 10 to 30% by weight. When the concentration is within the range, a suitable molecular weight and solution viscosity can be obtained.

As the process for polymerization, any known process can be used and the following are examples of particularly preferable processes for polymerization. That is, there are processes such as:

1) A process comprising dissolving aromatic diamine in an organic polar solvent and then polymerizing by reacting

US 7,018,704 B2

3

4

the solution with a substantially equimolar amount of aromatic tetracarboxylic dianhydride,

2) A process comprising reacting an aromatic tetracarboxylic dianhydride and an aromatic diamine compound of a much smaller molar amount compared to the dianhydride in organic polar solvent, producing a pre-polymer having an acid anhydride group at both ends and then polymerizing by using an aromatic diamine compound so that substantially equimolar amounts of the aromatic tetracarboxylic dianhydride and the aromatic diamine compound are used in total,

3) A process comprising reacting an aromatic tetracarboxylic dianhydride and an aromatic diamine compound of a much larger molar amount compared to the dianhydride in an organic polar solvent, producing a pre-polymer having an amino group at both ends and then after additionally adding an aromatic diamine compound, polymerizing by using an aromatic tetracarboxylic dianhydride so that substantially equimolar amounts of the aromatic tetracarboxylic dianhydride and the aromatic diamine compound are used in total,

4) A process comprising dissolving and/or dispersing an aromatic tetracarboxylic dianhydride in an organic polar solvent and then polymerizing by adding an aromatic diamine compound so that substantially equimolar amounts of aromatic tetracarboxylic dianhydride and the aromatic diamine compound are used in total,

5) A process of polymerizing by reacting a mixture containing substantially equimolar amounts of an aromatic tetracarboxylic dianhydride and an aromatic diamine in an organic polar solvent.

These processes can be selected suitably according to the desired properties.

Below, the materials used for the polyamide acid which is a precursor of polyimide in the present invention are described.

Examples of the acid anhydrides suitable for preparing the polyimide of the present invention include pyromellitic dianhydride, 2,3,6,7-naphthalenetetracarboxylic dianhydride, 3,3′,4,4′-biphenyltetracarboxylic dianhydride, 1,2,5,6-naphtalenetetracarboxylic dianhydride, 2,2′3,3′-biphenyltetracarboxylic dianhydride, 3,3′,4,4′-benzophenonetetracarboxylic dianhydride, 2,2-bis(3,4-dicarboxyphenyl)propane dianhydride, 3,4,9,10-perylenetetracarboxylic dianhydride, bis(3,4-dicarboxyphenyl)propane dianhydride, 1,1-bis(2,3-dicarboxyphenyl)ethane dianhydride, 1,1-bis(3,4-dicarboxyphenyl)ethane dianhydride, bis(2,3-dicarboxyphenyl)methane dianhydride, bis(3,4-dicarboxyphenyl)ethane dianhydride, oxydiphthalic dianhydride, bis(3,4-dicarboxyphenyl)sulfonic dianhydride, p-phenylenebis(trimellitic monoester acid anhydride), ethylenebis(trimellitic acid monoester acid anhydride), bisphenolAbis(trimellitic acid monoester acid anhydride) and the like. These compounds can be used alone or in a mixture of any proportion.

Among these, the most suitable acid dianhydride for the polyamide acid composition which is a precursor of polyimide of the present invention, is pyromellitic acid dianhydride. The amount of pyromellitic acid dianhydride is at least 40% by mole, more preferably at least 50% by mole, further preferably at least 70% by mole and most preferably at least 80% by mole.

Examples of the diamine which may suitably be used for the polyamide acid compound which is a precursor of polyimide of the present invention include 4,4′-oxydianiline,

p-phenylenediamine, 4,4′-diaminodiphenylpropane, 4,4′-diaminodiphenylmethane, benzidine, 3,3′-dichlorobenzidine, 4,4′-diaminodiphenylsulfide, 3,3′-diaminodiphenylsulfon, 4,4′-diaminodiphenylsulfon, 4,4′-diaminodiphenylether, 3,3′-diaminodiphenylether, 3,4′-diaminodiphenylether, 1,5-diaminonaphthalene, 4,4′-diaminodiphenyldiethylsilane, 4,4′-diaminodiphenylsilane, 4,4′-diaminodiphenylethylphosphineoxide, 4,4′-diaminodiphenyl-N-methylamine, 4,4′-diaminodiphenyl-N-phenylamine, 1,4-diaminobenzene (p-phenylenediamine), 1,3-diaminobenzene, 1,2-diaminobenzene and the like. Among these diamine compounds, preferably 4,4′-oxydianiline and p-phenylenediamine are used in a molar ratio of 9/1 to 4/6, more preferably 8/2 to 5/5. In the case that the molar ratio of these two diamines is out of the range, the coefficient of thermal expansion becomes larger and problems may occur such as the film becomes fragile and the flexural endurance decreases.

In the present invention, means to enhance flexural endurance are controlled by the stiffness value, so both the coefficient of thermal expansion and flexural endurance can be obtained. That is, the coefficient of thermal expansion and flexural endurance can both be obtained by determining the elastic modulus and film thickness so that the stiffness value is 0.4 to 1.2, and by selecting a chemical composition so that the coefficient of thermal expansion is suitable for a flexible printed circuit. Therefore polyamide acid can be synthesized by a common process by suitably selecting a known acid dianhydride and diamine component, preferably from the above-mentioned acid dianhydrides and diamine components, so that the coefficient of thermal expansion becomes 1.0 to $2.5\times10^{-5}$ cm/cm/° C.

Examples of the solvent preferable for synthesizing polyamide acid are amide solvents, such as N,N-dimethylformamide (DMF), N,N-dimethylacetamide and N-methyl-2-pyrrolidone and more preferably, N,N-dimethylformamide and N,N-dimethylacetamide can be used.

Also, various organic additives, inorganic fillers and various reinforcement materials can be added when needed.

As for the process of producing polyimide film from the above-mentioned polyamide acid solution, a conventionally known process can be used. Examples of the process include thermal imidization and chemical imidization, and chemical imidization is more preferable in view of thermal dimensional stability and mechanical strength. The chemical cure process is a process of reacting polyamide acid organic solvent solution with a dehydrating agent of which acid anhydrides such as acetic anhydride are typical and an imidization catalyst of which tertiary amines such as isoquinoline, P-picoline and pyridine are typical. Chemical imidization and thermal imidization can be used together. Although the heating conditions may change depending on the type of polyamide acid used and the film thickness, adjusting the heating time and temperature so that the propagation tear strength of the film defined by ASTM D-1938 becomes 140 to 360 g/mm, more preferably 160 to 320 g/mm, most preferably 200 to 300 g/mm is preferable in that the flexural endurance of the film can be enhanced.

In this way, a polyimide film can be obtained which has an average coefficient of thermal expansion at 100° to 200° C. of 1.0 to $2.5\times10^{-5}$ cm/cm/° C., preferably 1.0 to $2.0\times10^{-5}$ cm/cm/° C., more preferably 1.3 to $1.8\times10^{-5}$ cm/cm/° C. and also a stiffness value of 0.4 to 1.2 g/cm, preferably 0.4 to 0.8 g/cm and more preferably 0.5 to 0.7 g/cm.

In the case that the average coefficient of thermal expansion at 100° to 200° C. is out of the above-mentioned range, FPC is likely to warp or curl, which is undesirable. Also, in the case that the stiffness value is below the above-men-

US 7,018,704 B2

5

tioned range, especially when the film is thin, handling the film tends to become difficult due to floppiness, and in the case that the stiffness value is above the range, the flexural endurance tends to decrease. In the case that the stiffness value is within the above-mentioned range, the flexural endurance is enhanced.

The flexible printed circuit of the present invention can be obtained by laminating a conductor on the above-mentioned polyimide film.

Examples of the process for forming a conductor layer on the polyimide film are:

1) A process comprising laminating a layer of metal foil such as copper on the polyimide film by methods such as lamination or pressing via an adhesive layer,

2) A process comprising forming a conductor layer directly on the polyimide film by plating, vacuum deposition or sputtering

3) A process comprising applying polyimide or polyamide acid on Cu foil and then imidizing and/or drying.

In the case that an adhesive agent is used to laminate the conductor on the above-mentioned polyimide film in the flexible printed circuit of the present invention, the adhesive agent used include acrylic type, modified phenolic type, polyimide type and nylon-epoxy type, but is not limited to these examples.

The above-mentioned adhesive agent has an elastic modulus after curing of preferably at least 1 GPa, more preferably at least 1.5 GPa, and further preferably at least 2 GPa. Also, the thickness of the adhesive layer is preferably at most 60 μm, more preferably at most 50 μm and further preferably at most 40 μm. In the case that the elastic modulus and the thickness of the adhesive layer are out of the ranges, the number of flexes tends to decrease.

The thickness of the metal foil used is preferably at most 50 μm, more preferably 35 μm and further preferably 18 μm. In the case that the thickness of the metal foil is above the range, the number of flexes tends to decrease.

Furthermore, a particularly preferable result can be obtained in the case of a combination, in which the thickness of the metal foil is at most 18 μm, the elastic modulus of the adhesive agent is at least 2 GPa, the elastic modulus of the polyimide base film is 400 to 450 kg/mm$^2$ and the thickness of the polyimide base film is 18 to 22 μm.

In this way, a flexible printed circuit can be obtained in which the number of flexes is at least 10 million times, more preferably at least 20 million times, most preferably at least 40 million times.

The present invention is explained in detail through Examples below, but the present invention is not limited thereto.

Properties were measured in the following manner.

<Coefficient of Thermal Expansion>

Apparatus: TMA8140 made by Rigaku Electronic Corporation

Temperature profile: 20° to 400° C.

Heating rate: 10° C./min

Sample size: 5×20 mm

In order to remove the influence of shrinkage by heat, measurements were repeated twice at the above-mentioned temperature profile and then the average coefficient of thermal expansion at 100° to 200° C. was calculated from the second chart.

6

<Stiffness>

Measurements were carried out using a loop stiffness tester made by Toyo Seiki Works Co., Ltd by a sample width of 10 mm, a loop length of 50 mm and a squash distance of 10 mm.

<Film Thickness>

The film obtained is randomly cut out into the size of a sample for a flexural endurance experiment (180×25 mm) defined by JPCA-FC01 and the thickness was measured at ten points in equal intervals in the longitudinal direction from the central area by a contact thickness meter. The average of the obtained measured value $X_{ave}$ was assumed to be the film thickness.

<Propagation Tear Strength of the Film>

The propagation tear strength (g/mm) of the obtained film was measured according to ASTM D-1938.

<Number of Flexes>

A specimen was prepared according to JPCA-FC01. A FPC bending testing device "SEK-31B4" made by Shin-Etsu Engineering KK was used as the testing device and the sample was placed with the cover lay film side upward and measured under conditions of a curvature radius of 0.25 mm, stroke width of 15 mm, testing rate of 1500 rotations/minute and supply current of 1 mA. When the resistance value became 150% of the initial resistance value, it was determined that disconnection had occurred and value of less than 1 million was rounded off and the value was assumed to be the number of flexes.

REFERENCE EXAMPLE 1

Preparation of FPC

A copper-clad laminate was obtained by laminating rolled copper foil to a base film using an acrylic adhesive (Pyralux available from Dupont Co., Ltd., elastic modulus 2.3 GPa) (15 μm thickness). A circuit pattern was formed on the copper layer of the copper-clad laminate by etching according to JPCA-FC01. Then, a cover lay obtained by applying the above adhesive (35 μm thickness) on the exact same film as the base film was placed on the above copper-clad laminate having a circuit pattern and a flexible printed circuit (FPC) was obtained.

EXAMPLES 1, 2, 5 AND 6

A curing agent comprising 20 g of acetic anhydride and 10 g of isoquinoline was mixed to 100 g of a 18% by weight DMF solution of polyamide acid synthesized using pyromellitic dianhydride, 4,4'-oxydianiline and p-phenylenediamine in a mole ratio of 4/3/1. After stirring and defoaming by centrifugation, the mixture was applied by flow casting onto aluminum foil. Stirring and defoaming were conducted while cooling to 0° C. The laminate of the aluminum foil and polyamide acid solution was heated at 120° C. for 150 seconds and a gel film having self supportiveness was obtained. The gel film was peeled from the aluminum foil and fixed in a frame. The gel film was heated at 300° C., 400° C. and 500° C. respectively for 30 seconds and a polyimide film having an average coefficient of thermal expansion at 100° to 200° C. of $1.6\times10^{-5}$ cm/cm/° C. was

US 7,018,704 B2

7

prepared. Using this film, a FPC was obtained according to Reference Example 1. The properties of the film and the FPC are shown in Table 1.

### EXAMPLES 3, 4, 7 AND 8

A curing agent comprising 20 g of acetic anhydride and 10 g of isoquinoline was mixed to 100 g of a 18% by weight DMF solution of polyamide acid synthesized using pyromellitic dianhydride, 4,4'-oxydianiline and p-phenylenediamine in a mole ratio of 3/2/1. After stirring and defoaming by centrifugation, the mixture was applied by flow casting onto aluminum foil. Stirring and defoaming were conducted while cooling to 0° C. The laminate of the aluminum foil and polyamide acid solution was heated at 120° C. for 150 seconds and a gel film having self supportiveness was obtained. The gel film was peeled from the aluminum foil and fixed in a frame. The gel film was heated at 300° C., 400° C. and 500° C. respectively for 30 seconds and a polyimide film having an average coefficient of thermal expansion at 100° to 200° C. of $1.3 \times 10^{-5}$ cm/cm/° C. was prepared. Using this film, a FPC was obtained according to Reference Example 1. The properties of the film and the FPC are shown in Table 1.

### EXAMPLE 9

A FPC was obtained from the polyimide film prepared in Example 1 in the same manner as in Reference Example 1 except that a modified phenolic adhesive (9Y601 available from Kanebo NSC Co., Ltd, elastic modulus 8.4 GPa) was used instead of the acrylic adhesive. The properties of the film and the FPC are shown in Table 1.

### EXAMPLE 10

A FPC was obtained from the polyimide film prepared in Example 3 in the same manner as in Reference Example 1 except that a modified phenolic adhesive (9Y601 available from Kanebo NSC Co., Ltd, elastic modulus 8.4 GPa) was

8

used instead of the acrylic adhesive. The properties of the film and the FPC are shown in Table 1.

### EXAMPLE 11

A polyimide film and FPC were obtained in the same manner as in Example 5 except that the gel film was heated at 300° C., 400° C. and 520° C. respectively for 30 seconds.

### EXAMPLE 12

A polyimide film and FPC were obtained in the same manner as in Example 7 except that the gel film was heated at 300° C., 400° C. and 520° C. respectively for 30 seconds.

### COMPARATIVE EXAMPLE 1

A curing agent comprising 20 g of acetic anhydride and 10 g of isoquinoline was mixed to 100 g of a 18% by weight DMF solution of polyamide acid synthesized using pyromellitic dianhydride and 4,4'-oxydianiline in a mole ratio of 1/1. After stirring and defoaming by centrifugation, the mixture was applied by flow casting onto aluminum foil. Stirring and defoaming were conducted while cooling to 0° C. The laminate of the aluminum foil and polyamide acid solution was heated at 120° C. for 150 seconds and a gel film having self supportiveness was obtained. The gel film was peeled from the aluminum foil and fixed in a frame. The gel film was heated at 300° C., 400° C. and 500° C. respectively for 30 seconds and a polyimide film having an average coefficient of thermal expansion at 100° to 200° C. of $3.1 \times 10^{-5}$ cm/cm/° C. was prepared. Using this film, a FPC was obtained according to Reference Example 1. The properties of the film and the FPC are shown in Table 1.

### COMPARATIVE EXAMPLE 2

A polyimide film was prepared in the same manner as in Examples 1 and 2 except that the flow casting thickness was changed. Using this film, a FPC was obtained according to Reference Example 1. The properties of the film and the FPC are shown in Table 1.

TABLE 1

| | Base Film | | | | | | | FPC | | | |
| | $X_{ave}$ (μm) | $X_{max}$ (μm) | $X_{min}$ (μm) | a | Propagation tear strength (g/mm) | Elastic modulus (kg/mm²) | Loop stiffness (g/cm) | Ease in handling film when processing | Copper foil thickness (μm) | Number of flexes (10,000 times) | Appearance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ex. 1 | 21 | 22 | 20 | 0.095 | 240 | 420 | 0.7 | good | 35 | 1800 | good |
| Ex. 2 | 21 | 23 | 20 | 0.14 | 240 | 420 | 0.7 | good | 18 | 3200 | good |
| Ex. 3 | 21 | 22 | 20 | 0.095 | 220 | 467 | 0.8 | good | 35 | 1900 | good |
| Ex. 4 | 21 | 22 | 19 | 0.14 | 220 | 467 | 0.8 | good | 18 | 3500 | good |
| Ex. 5 | 18 | 20 | 17 | 0.17 | 220 | 420 | 0.5 | good | 35 | 2100 | good |
| Ex. 6 | 18 | 20 | 17 | 0.17 | 220 | 420 | 0.5 | good | 18 | >4000 | good |
| Ex. 7 | 18 | 19 | 17 | 0.11 | 200 | 467 | 0.5 | good | 35 | 2300 | good |
| Ex. 8 | 18 | 18 | 17 | 0.056 | 200 | 467 | 0.5 | good | 18 | >4000 | good |
| Ex. 9 | 21 | 22 | 20 | 0.095 | 240 | 420 | 0.7 | good | 18 | >4000 | good |
| Ex. 10 | 21 | 23 | 20 | 0.14 | 220 | 467 | 0.8 | good | 18 | >4000 | good |
| Ex. 11 | 18 | 19 | 17 | 0.11 | 190 | 430 | 0.5 | good | 35 | 1800 | good |
| Ex. 12 | 18 | 20 | 17 | 0.17 | 180 | 470 | 0.5 | good | 35 | 2000 | good |
| Com. Ex. 1 | 20 | 22 | 17 | 0.25 | 260 | 320 | 0.3 | bad | 35 | 1300 | warpage |
| Com. Ex. 2 | 30 | 33 | 28 | 0.17 | 290 | 425 | 1.9 | good | 35 | 800 | good |

US 7,018,704 B2

**9**

INDUSTRIAL APPLICABILITY

The present invention provides a flexible printed circuit which has excellent thermal dimensional stability and flexural endurance and is free from curl, torsion and warpage due to temperature change, and a base film thereof.

The invention claimed is:

1. A polyimide film for flexible printed circuit, having an average coefficient of thermal expansion of $1.0 \times 10^{-5}$ to $2.5 \times 10^{-5}$ cm/cm/° C. in temperature range of 100° C. to 200° C. and a stiffness value of 0.4 to 1.2 g/cm where the polyimide is obtained from diamine containing 4,4'-oxydianiline and paraphenylenediamine in a mole ratio of 9/1 to 4/6.

**10**

2. A flexible printed circuit comprising an adhesive layer and/or a conductor layer and an insulation material, wherein the polyimide film of claim 1 is used as said insulation material.

3. The flexible printed circuit of claim 2 having a number of flexes of at least 10 million times.

4. A flexible printed circuit comprising an adhesive layer and/or a conductor layer and an insulation material, wherein the polyimide film of claim 1 is used as said insulation material.

5. The flexible printed circuit of claim 4 having a number of flexes of at least 10 million times.

\* \* \* \* \*

## PROOF OF SERVICE

I hereby certify that on this 6th of March, 2015, I caused the foregoing

**ADDENDUM PURSUANT TO FRC 28(a)(12)** to be filed electronically with the

Clerk of the Court using the Court's CM/ECF System, which will serve via e-mail

notice of such filing to the following CM/ECF-registered users:

| | |
|---|---|
| Mark D. Sweet | Nathan K. Kelley |
| Finnegan, Henderson, Farabow, | U.S. Patent & Trademark Office |
| Garren, & Dunner LLP | Mail Stop 8 |
| 901 New York Avenue, N.W. | P.O. Box 1450 |
| Washington, D.C. 20001-4413 | Alexandria, VA 22313-1450 |
| | COURTESY COPY EMAIL TO: |
| | kristi.sawert@uspto.gov |

I further certify that, upon acceptance from the Court of the e-filed

document, the required paper copies of the foregoing will be filed with the Court

via Priority Mail Express (f/k/a Express Mail) to the Clerk of Court, United States

Court of Appeals for the Federal Circuit, 717 Madison Place, NW, Washington,

DC, 20439 and the required two paper copies of the foregoing were served on each

of the parties listed above, also by Priority Mail Express.

Respectfully submitted,

Date:  6 March 2015                    /s/ Pattric J. Rawlins
                                       Pattric J. Rawlins
                                       Procopio, Cory, Hargreaves &
                                       Savitch LLP
                                       525 B Street, Suite 2200
                                       San Diego, CA 92101
                                       pattric.rawlins@procopio.com